745 So.2d 1077 (1999)
Sue S. LEVIN, Appellant/Cross-Appellee,
v.
David H. LEVIN, Appellee/Cross-Appellant.
No. 98-3114.
District Court of Appeal of Florida, First District.
November 22, 1999.
*1078 E. Jane Brehany, Pensacola, for Appellant/Cross-Appellee.
Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola; T. Sol Johnson of Johnson, Green & Miller, Milton, for Appellee/Cross-Appellant.
BROWNING, J.
We affirm, without further comment, five of the eight issues raised in this appeal and cross-appeal from a final judgment of dissolution of marriage. As to the remaining issues, all of which were raised by the appellant/cross-appellee wife, we reverse and remand the trial court's failure to require the appellee/cross-appellant husband, under section 61.08(3), Florida Statutes (1995), to secure the alimony award through a life insurance policy, or otherwise secure such alimony owed with other assets. We clarify and affirm the judgment in regard to the absence of a payment schedule for the promissory note the husband executed and owed to the wife. Finally, we reverse the $20,000 lump sum alimony award.
Turning first to the trial court's failure to require security for the alimony award, the wife requested that the husband be directed to secure the alimony award by maintaining a life insurance policy in her favor; however, the trial court's order failed to address this issue. The circumstances in this case are even more compelling than those in Sasnett v. Sasnett, 679 So.2d 1265 (Fla. 2d DCA 1996), to justify such an award. Consequently, we conclude that the trial court abused its discretion by failing to grant the wife's request to secure the alimony award through a life insurance policy, or to otherwise secure such alimony award with other assets, and we remand with directions to grant her request. In making such determination the trial court shall consider wife's life expectancy, husband's insurability, *1079 husband's present insurance coverage that can be designated to secure wife's alimony payments, other assets that might be appropriately utilized to secure wife's alimony, and the present value of the secured amount to be paid to the wife in case of husband's death.
Regarding the issue that the trial court erred in not establishing a payment schedule for the promissory note due from the husband to the wife, the final judgment recited that the wife was entitled to a non-interest bearing, one-year note as her separate, nonmarital property. It also required either party not in possession of personal property awarded to them to make arrangements within 20 days from the judgment to take possession of such property, and it directed the parties to cooperate in the exchange of the personal property. We construe the final judgment as requiring the husband to pay the wife the monies represented by the promissory note, which were due and owing at the time the judgment was entered, within 20 days thereafter. Based on this construction we affirm.
As to the wife's contention that the amount of lump sum alimony awarded was inadequate the standard of review is abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).
Awards of lump sum alimony are authorized under section 61.08, Florida Statutes (1995). As explained in Canakaris, lump sum alimony can be awarded in several instances. First, it may be awarded as a nonalimony property interest, that is, a special equity acquired by one spouse in the marital or nonmarital property of the other. Second, it can be allowed as a support payment, that is, alimony paid in one sum when the equities of the case justify a lump sum award. Third, it may be provided to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects justification for the lump sum award and financial ability to pay. Id. at 1200-01.
We conclude the trial court awarded the wife lump sum alimony for support, and we review on that basis. We so conclude because the parties' prenuptial agreement does not address alimony, but makes provision for other familial rights acquired as a result of the parties' marriage.
Entitlement to alimony is based upon the need of the requesting spouse, and the ability of the responding spouse to pay. Id. at 1201. The need of the spouse requesting alimony is measured by the standard of living established by the parties during their marriage. Pirino v. Pirino, 525 So.2d 1028 (Fla. 5th DCA 1988).
The ability of the husband to financially provide for the needs of the wife cannot be disputed. Husband's net worth is $5,133,507. During the parties' marriage husband earned from his highly successfully law practice between $282,000 and $1,800,000 per year. When other income of the husband is considered the record shows he never earned less than $451,000 a year during the parties' marriage. Thus, husband's ability to pay is not an issue, only the wife's reasonable needs, measured by the standard of living enjoyed by the parties during their marriage.
The parties were married on August 15, 1985, and during their marriage maintained an opulent standard of living. They traveled extensively, and stayed in luxury hotels such as the Westin and Ritz Carlton, and indulged in the more expensive and finer things of life. The wife exercised unfettered spending authority. The parties employed two (2) full-time maids and one (1) full-time gardener. They furnished their home with the most expensive furniture and fixtures. After the husband and wife married, husband spent $191,000, to remodel his existing home to accommodate wife's children from her former marriage. Their former marital residence, sole property of husband, is valued by him *1080 on his financial affidavit at $750,000. Needless to say the parties' standard of living approximated the level that most people dream of achieving, but seldom do.
Wife is totally dependent upon alimony payments she is to receive from husband. Wife is fifty-two years of age, and admittedly has little wage earning capacity. The trial court awarded wife $5,000 per month alimony, and that amount is not contested. The alimony award is based upon wife's actual expenses after her separation from husband rather than her anticipated expenses. Conspicuously absent from this monthly award is any amount with which the wife can be expected to acquire suitable housing even remotely approximating the accommodations furnished her during marriage. But the wife is entitled to receive an amount of alimony sufficient to secure suitable living quarters, and the trial court failed to make such an award.
The trial court apparently addressed wife's relocation needs, which include housing, by an award of lump sum alimony of $20,000. However, $20,000, taken with wife's periodic alimony, is woefully inadequate to provide any semblance of the housing to which the wife became accustomed during the marriage, and which the husband has the present ability to provide. Because of this deficiency we conclude the trial court abused its discretion and erred by not providing a larger amount of lump sum alimony with which the wife could secure suitable living accommodations. Canakaris. Accordingly, we remand on this issue for a determination by the trial court of an award of an amount of lump sum alimony that will enable the wife to acquire suitable living accommodations. The amount shall be determined by the trial court by considering wife's present needs, the housing to which wife became accustomed during the parties' marriage, the husband's ability to pay and other relevant factors.
AFFIRMED in part, REVERSED in part, and REMANDED for future proceedings.
LAWRENCE, J., concurs
ERVIN, J., concurs and dissents with opinion.
ERVIN, J., concurring and dissenting.
I concur with all aspects of the majority's opinion, except that part reversing the lump sum alimony award. As to this issue, I do not disagree with the case law cited by the wife in which lump sum alimony was properly allowed to rectify inequities in property distribution and income disparity. See, e.g., Carrison v. Carrison, 486 So.2d 1363 (Fla. 1st DCA 1986) (wife awarded $2,500 in permanent monthly alimony and $250,000 in lump sum alimony in situation in which husband's assets far outweighed the wife's); Bryan v. Bryan, 442 So.2d 362 (Fla. 1st DCA 1983) (awarding the wife $75,000 in lump sum alimony so as to achieve equity by affording the wife the opportunity to continue a standard of living); Coll v. Coll, 507 So.2d 1140 (Fla. 3d DCA 1987) (awarding the wife $600,000 in lump sum alimony to ensure equitable distribution of marital property). Unlike the present appeal, none of these cases involves a prenuptial agreement that limits the trial court's equitable discretion.
The majority justifies its reversal of the amount of lump sum alimony on the theory that it was awarded as a means of support, and not for the purpose of a property distribution, or as a special interest in the separate property of the other spouse, notwithstanding the existence of an antenuptial agreement. In so deciding, the majority has apparently overlooked Hannon v. Hannon, 740 So.2d 1181 (Fla. 4th DCA 1999) (en banc), which, in reversing an award of lump sum alimony, specifically recognized that the lower court had authorized the award as a means of providing the recipient with support that would apparently continue for a period long after the payor's death. There the spouses had *1081 entered into a prenuptial agreement in which both had the right to dispose of their separate property during their lifetimes, as well as to dispose of it by will to anyone, thereby disinheriting the other. Neither the agreement in Hannon nor in the present case made any provision for alimony.
In noting the distinction between periodic payments of permanent alimony, which terminate upon the obligor's death, and those of lump sum alimony, which do not, the court observed that although lump sum can be made available for equitable distribution as well as support, such provision "does not mean that a court can defeat the renunciation of property in an antenuptial agreement simply by shifting the label of the lump sum award from distribution of property to support." Id. at 1187. In regard to the effect of a prenuptial agreement on alimony, the court made the following pertinent observations:
A primary purpose of an [antenuptial] agreement is to modify or shrink the general discretion of the dissolution of marriage judge in doing equity between the parties. The agreement itself is intended to define the mutual equities, and the trial judge is not free to ignore its provisions or to render them ineffective. As a general matter, the provisions in chapter 61 on alimony do not exist to displace nuptial agreements; rather the statutes exist to set the principles when there is no agreement. Dissolution of marriage courts should attempt to give effect to nuptial agreements that are ... properly made and fully enforceable.
Id. at 1187.
The court concluded its discussion of the recipient spouse's right to alimony by focusing on the specific provisions of the parties' agreement:
Where as here the agreement expressly waives any right to the payor's separate property both during his lifetime and after death as well, and where as here the agreement of support is carefully constricted to only the payor's lifetime, any lump sum would have to avoid the effect of transferring his property to the recipient and confine any alimony to the recipient's lifetime. Thus the intent of the parties' agreement in this case is to shrink the use of an award of lump sum to support only to carry out the contractual promise to support her during his life.
Id. at 1188. Although the court in Hannon reversed the lump sum award, it nonetheless remanded the case for the purpose of determining the recipient's right to periodic payments during the obligor's lifetime, in that the agreement did not renounce her right to same under such circumstances.
In the antenuptial agreement in the case at bar, the parties clearly renounced their respective rights to inherit from the other in the event of divorce. Additionally, both represented that they were financially self-sufficient. Finally, paragraph 9 expressly provides that each party "shall respectively have and hold in her or his own name and under his or her sole and separate control ... all property which she or he now has or may hereafter acquire ... together with the earnings and increase thereof." This broad language clearly controls what property each of the parties owns separately, and thereby precludes use of lump sum alimony as a property or special equity interest in the husband's separate property.
Whether the agreement would nonetheless permit an award of permanent, periodic alimony, as in Hannon, is not before us in that no issue has been raised as to the amount of permanent alimony ordered.
The final judgment properly gave effect to the agreement. Both parties retained their own separate properties; appellant was awarded monthly periodic permanent alimony payments of $5,000, which, pursuant to the majority's directions, will be secured through a life insurance policy; she was given a larger share of the marital property; and she was provided $20,000 to *1082 assist her in initiating her separate living. Therefore, because the parties' antenuptial agreement defined the mutual equities, and the trial court's ruling gave effect to the agreement's broad language, I conclude that the trial court did not abuse its discretion by awarding the former wife $20,000 in lump sum alimony.