679 So.2d 1265 (1996)
Mary Ann SASNETT, Appellant,
v.
Odell O. SASNETT, Appellee.
No. 94-04299.
District Court of Appeal of Florida, Second District.
September 20, 1996.
*1266 W. Dale Gabbard of Guito & Gabbard, Tampa, for Appellant.
Earl McMillin, Cape Canaveral, for Appellee.
RYDER, Acting Chief Judge.
In this appeal from a final judgment of dissolution of marriage, we affirm the lower court's upholding of an antenuptial agreement, but reverse as insufficient its award of permanent periodic alimony and its denial of the wife's request for life insurance to secure the alimony award.
Mary Ann Sasnett and Odell Sasnett lived together for four years before they married. They were middle-aged when they married each other; it was a third marriage for her and a second for him. When they met, she was working at a restaurant, and he was retired on a disability pension as a government printer. He owned two trailer parks which he later sold during the marriage for a total of $600,000.00. He also owned parcels of real estate located in Maryland and Hillsborough County, Florida. The wife has no formal education or training. She assisted her husband in the trailer park businesses by managing and cleaning them without pay for fifteen years.
At the time of the dissolution, the wife, age fifty-nine, and husband, age seventy-two, had been married for sixteen years. There were no children born of the marriage. The wife, who suffers serious health problems, cannot adequately support herself. She now works as a part-time receptionist.
The husband's financial affidavit reflects that his total net monthly income is $3,342.01. He owns real estate in Thonotosassa and Seffner, Florida and California, three motor vehicles, stock, cash and cattle. The Florida properties were acquired prior to the marriage and are apparently separate property. The land upon which the marital home was built was acquired prior to the marriage, but the residence was constructed during the marriage. The California property was purchased during the marriage. He valued his 50% interest in the California property at $500,000.00 and listed encumbrances on that property totalling $744,000.00. The wife's California appraiser testified that, in his opinion, the value of the California property was $2,320,000.00 based upon a sales comparison approach, and $2,305,000.00 based upon a cost approach. The property is assessed at $1,284,000.00.
*1267 In 1988, the husband invested some of the proceeds from the trailer park sales in the California agricultural property. In 1992, the year before the parties petitioned for divorce, the wife quitclaimed to the husband her interest in the property, which she did, according to him, to avoid any loan obligations. An additional loan was taken out not long after she signed the quitclaim. The property has not generated any income to him, and he does not expect it to do so for ten to fifteen years.
The wife's financial affidavit reflects a total net monthly income of $363.00 per month. She listed a remaining $35,000.00 cash balance of the amount the court ordered her to split with the husband pursuant to the court's April 5, 1994 order. She also listed a $3,500.00 inheritance from her mother and an automobile.
The trial court awarded the former wife $750.00 per month in permanent periodic alimony and, as additional alimony, required the husband to pay for the wife's medical expenses until she became eligible for Medicare. Although the wife asked for a special equity in the marital home and real property because her efforts enhanced their value, the lower court did not rule upon her request. The final judgment made virtually no findings to support its conclusions. It did not mention or characterize the cash asset which was the subject of its April 5, 1994 order requiring the wife to divide equally with the husband the sum of $122,328.58 in jointly held assets. The court ordered that those funds be utilized for normal living expenses and payment of attorney's fees [1], and required that the funds be held separately and subject to a strict accounting. Because the court denied any lump sum alimony, the remaining $35,000.00 presumably represents an equitable distribution, but the final judgment makes no mention of it. No evidence was adduced from which the court could determine the amounts utilized as temporary alimony and attorney's fees, and, therefore, it cannot be properly characterized based upon the state of the record.
The trial court erred in failing to make any specific findings concerning the parties' assets or to characterize them. It must include in the final judgment written findings setting forth its rationale for the distribution of marital assets. § 61.075(3), Fla. Stat. (1995); Lavelle v. Lavelle, 634 So.2d 1111 (Fla. 2d DCA 1994). The trial court must also establish values and award all marital assets as part of the equitable distribution. 634 So.2d at 1112.
The record could support a conclusion that most of the husband's separate property was paid for prior to the marriage. The record shows that the husband had already earned his government disability pension and that the Maryland property was part of a property distribution with respect to his prior marriage. Although the land on which the marital residence is located was fully paid for prior to the marriage, the home was constructed after the marriage. There is no record as to whether marital funds or separate funds were utilized to fund its construction. Although one could draw conclusions as to certain assets, there is a lack of evidence to support other findings the lower court must make, and there is a complete lack of findings as to any characterization of assets.
The trial court also erred in failing to make the factual findings required by section 61.08, Florida Statutes (1995), with respect to the award of alimony. Donsky-Levine v. Levine, 658 So.2d 1023 (Fla. 4th DCA 1995). In determining the proper amount of alimony, the court must consider all relevant economic factors, including their standard of living during the marriage, the duration of the marriage, the parties' ages and physical and emotional health, their financial resources, the nonmarital and marital assets and liabilities distributed to each, the contribution of each party to the marriage, all sources of income available to either party and any other factor necessary to do equity and justice between the parties. § 61.08(2), Fla. Stat. (1995). Other than the court's *1268 implicit recognition of the wife's health problems by its requirement that the husband pay the wife's medical expenses as alimony, no findings were made in the final judgment. No consideration was given to the wife's efforts over fifteen years to increase the value of the trailer park properties. And no reference is made to the distribution of the marital and nonmarital assets as that may affect an alimony award.
The wife's net monthly income of $363.00 and her $750.00 award of alimony provide her with a net monthly income of $1,113.00. Although the parties' financial circumstances will not allow them to maintain the life style they enjoyed during the marriage, this award is clearly insufficient. Unlike the husband whose residence is fully paid for, the wife must pay rent and her other living expenses from this amount. This is not a long-term marriage, but neither is it a short-term one. The wife's age and physical and emotional health, the parties' marital and nonmarital assets and the equitable distribution of marital property must be more fully considered in order to determine an adequate alimony award. Further, the husband owns free and clear other properties which he could sell in order to generate additional funds to pay a more adequate award of alimony.
The parties' one-sentence antenuptial agreement provided that after the date of their marriage, neither party would assert any claim against the other's separate real or personal property. It was drafted without the assistance of counsel. It did not exclude any right to alimony, and provided no formula for its calculation. The antenuptial agreement also did not contemplate any equitable distribution of later-acquired marital assets. Although the agreement was executed the day of their marriage, the parties had discussed their desire for such an agreement ahead of time. The wife was concerned about retaining her inheritance and she had a general and approximate knowledge of the husband's property. See Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla.1962). Although we conclude that the lower court did not abuse its discretion in upholding the antenuptial agreement, as a practical matter, it has little effect on the determination of property rights here. It only affects each party's separate property acquired before the marriage to which, as a general rule, the spouse is not entitled.
Section 61.08(3), Florida Statutes (1995), provides that "[t]o the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose." § 61.08(3), Fla. Stat. (1995). The statute "permits the trial court to order an obligated spouse, as an integral part of the equitable distribution and support scheme, to purchase life insurance or other security either to satisfy arrearages or to otherwise protect the receiving spouse in appropriate circumstances." Sobelman v. Sobelman, 541 So.2d 1153 (Fla.1989). Justice Ehrlich, concurring specially in Sobelman, declared that he believed the import of the statutory language "to protect an award of alimony ... or to otherwise secure such alimony award" is to "require that the purchase of life insurance be an integral part of the equitable distribution and support scheme, not something additional provided to the receiving spouse." He reasoned that "[i]n certain circumstances..., it may be necessary to provide some financial security to the receiving spouse after the death of the obligated spouse." Sobelman, 541 So.2d at 1155 (Ehrlich, J., concurring).
In Kowalczyk v. Kowalczyk, 627 So.2d 591 (Fla. 2d DCA 1993), life insurance secured the alimony award where the parties were about forty-five years of age, in apparent good health, and the wife received far more substantial assets despite the fact that her earning capacity was impaired. The present circumstances clearly demonstrate the "appropriate circumstances" to require some form of security to secure the alimony award. The husband's sudden demise would seriously jeopardize the wife's well being, both financially and healthwise. He is obligated to pay for her medical expenses for only a few more years until she is entitled to Medicare. The wife has few assets other than the alimony award for her support. *1269 She is not young, and due to her poor health and lack of employment skills, she cannot hope to achieve the life style she enjoyed during the marriage. The husband's income provides a comfortable life style for him, especially in light of the fact that most of his property is unencumbered. Of course, the cost of such life insurance or other arrangement to secure the alimony award must be factored into the equitable distribution and alimony scheme. Sobelman; Schere v. Schere, 645 So.2d 21 (Fla. 3d DCA 1994).
We, therefore, reverse and remand for further proceedings to address the final judgment's equitable distribution scheme, the alimony award and the denial of any form of security to secure the alimony award. Upon remand, the lower court must conduct further proceedings in order to make required findings regarding the equitable distribution of property and the award of alimony. We affirm the lower court's upholding of the antenuptial agreement.
Reversed in part, affirmed in part and remanded for further proceedings.
BLUE and LAZZARA, JJ., concur.
NOTES
[1] The final judgment retained jurisdiction to assess attorney's fees and costs between the parties. That order is currently on appeal to this court.