722 So.2d 280 (1998)
Ruth RICHARDSON, Appellant,
v.
Leaman RICHARDSON, Appellee.
No. 98-1262
District Court of Appeal of Florida, Fifth District.
December 31, 1998.
Benjamin J. Cox, Leesburg, for Appellant.
Shannon McLin Carlyle of Shannon McLin Carlyle, P.A., and Susan A. Balmer of Susan A. Balmer, P.A., Leesburg, for Appellee.
GOSHORN, J.
Ruth Richardson appeals a final judgment of dissolution of marriage. She argues that the trial court abused its discretion by failing to award her Leaman Richardson's disability survivor annuity benefit and/or the life insurance policies to secure her alimony award, by unequally distributing the marital assets, and by awarding an insufficient amount of permanent alimony. We agree and reverse.
The parties were married in January 1964 and separated in February 1995. The wife was 74 years old at the time of the final hearing; the husband was 63 years old. The wife has had two surgeries on her carotid arteries, was recently hospitalized for shingles, and has an aneurysm that needs surgery. She was put on Prozac because of her nerves and takes medicine for her high blood pressure and cholesterol. Her heart doctor and vascular surgeon have advised her not to work. Previously, the wife worked in various department stores, but has not worked since 1989.
*281 After the separation and pursuant to the parties' written agreement, the wife remained in the unencumbered marital home and had sole use of the parties' only car, a 1989 Cadillac. She receives Social Security and K-Mart pension benefits totaling almost $400 per month. The husband paid her $300 temporary alimony pending the divorce. With only $700 per month income, the wife was forced to greatly reduce her expenses; her expenses still exceed her income by $480 per month.
The husband has a disability retirement due to a physical condition that required he have the bones in his spine fused and plastic joints placed in his toes. The condition, while painful, has not slowed him down. He plays golf and works 17 hours per week at the local golf course as a starter. He retired to the golf community after 20 years with the Postal Service. The husband's monthly disability income from the Postal Service is $1,131.25 net (approximately $1700 gross) and he nets $250 per month from his job at the golf course. He admitted that once he drops the wife from his health insurance coverage, his disability check will increase $72, making his net total income $1,453.25. The husband's Postal Service employment furnishes disability survivor annuity benefits, of which the wife was named beneficiary. If the husband is allowed to cancel these benefits, his disability check would increase an additional $126 per month. He also carries three different life insurance policies: a $5,000 policy, a $10,000 policy, and a $32,000 policy. After the husband turns 65 in August 1999, he will no longer have to pay premiums on any of the life insurance policies.
The parties had a modest number of marital assets, including stocks, savings and checking accounts, the car, the husband's $11,000 IRA, and the marital home, which the parties agreed to put on the market for $79,900. The trial court divided the stocks and bank accounts evenly and awarded the wife the car. The court found the wife had received $11,000 in rental value of the home from the date of separation to the date of trial and, to offset that amount, awarded the husband the entire $11,000 IRA. The husband was ordered to pay the annual real estate taxes on the house, pending its sale. Alimony of $350 per month was instituted. Each side was ordered to bear its own attorney's fees and costs.
We first address the failure of the trial court to secure the alimony award with either the life insurance policies or the annuity. Paragraph 61.08(3), Florida Statutes, provides:
To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose.
This section "allows broader use of life insurance policies than just to compensate for existing alimony arrearages." Shimek v. Shimek, 545 So.2d 837 (Fla.1989). A trial court may order the purchase of insurance either to satisfy arrearages or to protect the receiving spouse "in appropriate circumstances." Sobelman v. Sobelman, 541 So.2d 1153 (Fla.1989). Such circumstances have been found where the wife would be left in dire economic straits upon the death of the husband. For example, in Sasnett v. Sasnett, 679 So.2d 1265, 1268-69 (Fla. 2d DCA 1996), the court reversed the denial of the wife's request for life insurance to secure the alimony award, noting:
The husband's sudden demise would seriously jeopardize the wife's well being, both financially and healthwise. He is obligated to pay for her medical expenses for only a few more years until she is entitled to Medicare. The wife has few assets other than the alimony award for her support. She is not young, and due to her poor health and lack of employment skills, she cannot hope to achieve the life style she enjoyed during the marriage.
Under the final judgment as it stands, the wife will have income totaling just short of $750 per month on which to live. She is not in good health and has been advised not to get a job, even assuming there was any job market for a woman in her position. If the husband predeceases her, the wife will have to live on approximately $400 per *282 month, an amount which would certainly jeopardize the wife's very existence.
The husband already had in effect three different life insurance policies totaling $47,000 and a survivor benefit annuity[1] which would provide $888 per month to the named beneficiary. The wife was originally named as beneficiary of the life insurance policies and the survivor benefit annuity, obviously to protect her in the event of the husband's death, an implicit recognition of the wife's need for benefits in the event he predeceased her. Those needs do not disappear upon divorce. While she may not have a need to continue as beneficiary of all three policies and the annuity, the facts of the case amply demonstrate the wife's need for some protection in the event the husband predeceases her.
There would have been minimal financial impact by requiring the husband to maintain the life insurance for the benefit of the wife because his obligation to pay policy premiums ends in August 1999.[2] At that time, the husband's net income will increase by the amount of the policy premiums he was paying. As to the husband's financial ability to continue the payments on the annuity, the husband testified that he intends to continue making the payments, but wants to replace the wife with his fiancée as beneficiary. However, the husband should not be allowed to secure the future of his prospective bride at the expense of his elderly wife of 34 years. We note that there was testimony that two beneficiaries could be named to the annuity, a compromise which would assist the wife and yet provide some benefit to his fiancée, should the husband continue in his desire to secure the fiancée's future upon their marriage. Upon remand, the trial court should determine whether the life insurance policies or the annuity, or some combination thereof, would best secure the alimony award in the event the husband predeceases the wife and order same.
Next, we turn to the court's award to the husband of his $11,000 IRA to balance the wife's portion of the rental value of the home during the parties' three year separation. When the parties separated, the husband signed an agreement which provided that the wife could live in the house as long as she wanted or until one of the parties remarried. The agreement was approved and incorporated into the temporary support order. The wife contends that the right to remain in the house was an incident of support, and thus the court erred in assigning that right a value and offsetting it with the award to the husband of his IRA. We agree.
Not only do the agreement and subsequent temporary support order show the correctness of the wife's position, the husband did not assert a claim for half the rental value of the home during the wife's exclusive possession, a further indication that her occupation was acknowledged by both parties to be an incident of support. See Thomas v. Thomas, 712 So.2d 822 (Fla. 2d DCA 1998) (holding that when a co-owner's possession of the home is an aspect of court-ordered support, the co-owner out of possession may not claim rent even if he has been directed to pay his proportionate share of the property expenses) (citing Berger v. Berger, 559 So.2d 737 (Fla. 5th DCA 1990)); see also Sency v. Sency, 478 So.2d 432, 433 (Fla. 5th DCA 1985) ("Exclusive possession given an exspouse and children of a marriage always constitutes an aspect of child support in kind and sometimes also constitutes an aspect of alimony."). Because the exclusive use of the home was an incident of support, we reverse the offsetting award of the $11,000 IRA to the husband and remand to the trial court for entry of an order distributing the IRA between the parties.
*283 Finally, we must reverse for the trial court's failure to make express findings of fact which would allow this court to weigh the propriety of awarding the wife only $350 per month permanent alimony, contrary to subsection 61.08(1)'s direction to do so. See § 61.08(1), Fla. Stat. (1997) ("In all dissolution actions, the court shall include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony."). The husband asks that this court not remand for fact findings due to the modest circumstances of both parties. He cites Killius v. Killius, 701 So.2d 1245 (Fla. 5th DCA 1997) (Thompson, J., concurring) (noting that it would be a financial burden on the parties to remand the case for the missing fact findings) and contends that the error in failing to make the findings was harmless. See Brock v. Brock, 682 So.2d 682 (Fla. 5th DCA 1996) (harmless error to fail to address all statutory factors).
While we sympathize with the husband's argument, we must reject it. It is, of course, well established that the parties need not end up in exactly equal positions, however, "a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be `shortchanged.'" Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980). Here, the wife has passed into misfortune with this divorce decree and there is no record basis for allowing that to occur. The husband can afford a higher alimony amount and the wife certainly has need for same. There is nothing harmless about the lack of factual findings in this circumstance; without them, there is no way to determine why the trial court would enter an order having this effect. Accordingly, we reverse and remand for findings of fact and reconsideration of the alimony in light of the findings made.
In summary, we hold that the trial court erred in not ordering that the husband continue the wife as beneficiary of either the survivor annuity or the life insurance policies, and remand for inclusion of a provision requiring the husband to maintain the wife as beneficiary of the annuity, or the life insurance policies, or some combination thereof. Further, in light of the unrebutted evidence that the wife enjoyed exclusive possession of the marital home as an incident of support during the separation, it was error to reduce her share of the marital assets by the rental value of her possession. Accordingly, the award of the $11,000 IRA to the husband is reversed, and the trial court is directed to divide the IRA between the parties. Finally, the trial court is directed to make factual findings to support the meager alimony award or increase the award.
REVERSED and REMANDED with instructions.
ANTOON, J., and BLACKWELL-WHITE, A., Associate Judge, concur.
NOTES
[1] The use of survivor benefits to secure the support award is analogous to the use of life insurance as security for the payment of alimony. Sobelman; Wrinkle v. Wrinkle, 592 So.2d 760 (Fla. 5th DCA 1992).
[2] See Sobelman (noting that the trial court would have to consider the financial impact of an order requiring a spouse to maintain life insurance so that a requirement to pay premiums should be taken into account in the determination of the amount of alimony awarded); see also Wrinkle; Edwards v. Edwards, 559 So.2d 281 (Fla. 4th DCA 1990).