NORTHCUTT, Judge.
Paul Bikowitz appeals the final judgment dissolving his marriage to M. Lynn Pope Bikowitz. We affirm the judgment, save for the following.
The primary point of contention between the parties relates to a large payment Mr. Bikowitz received from his employer during the divorce proceedings. The payment coincided with the sale of the employer’s assets to another company. The structure of the sale was such that Mr. Bikowitz would receive no benefit from a “change of control” provision in his employment contract, which Ms. Bikowitz, an attorney, had helped him negotiate. The provision would have entitled him to a large payment if a majority of the employer’s corporate shares were transferred or sold to a *1139 third party and Mr. Bikowitz elected to leave the company. Instead, Mr. Bikowitz and the employer ultimately entered into a termination agreement under which the payment was made. Mr. Bikowitz contests the trial court’s characterization of the payment as a marital asset.
Both parties rely on this court’s decision in Ruberg v. Ruberg, 858 So.2d 1147 (Fla. 2d DCA 2003), which addressed the proper characterization of stock options and restricted shares that had been granted to the husband by his employer. The issue, the court wrote, hinges on the “primary purpose” of the grant.
If the primary purpose is to compensate for past services, the award is a form of deferred compensation. If the primary purpose is to compensate for future services, the award is not a form of deferred compensation. The primary purpose of an option grant is, of course, a factual question that depends on the pertinent circumstances. And the expressed purpose of the employer is an important factor in determining that factual question.
Id. at 1154.
In this case, there is no question that the payment to Mr. Bikowitz was, in part, consideration for a noncompete provision and an obligation to furnish consulting services to the company’s buyer for a limited period, both of which were contained in the termination agreement. Such payments for future considerations would properly be deemed nonmarital. See Demont v. Demont, 67 So.3d 1096, 1105-06 (Fla. 1st DCA 2011) (holding that installment payment paid to husband after his termination was nonmarital, where purpose of payment was consideration for noncompete agreement).
On the other hand, the employer’s general counsel, who was also a director and officer of the employer, testified that the payment was made to Mr. Bikowitz in order to honor the spirit of the original employment agreement. According to this witness, the inapplicability of the change-of-control provision to an asset sale was likely an oversight; he and the board chairman reviewed the provision and “concluded that at least the spirit of what was intended” applied to the asset sale. The amount of the payment was based on the change-of-control terms of the employment agreement.
The latter evidence supports a conclusion that the employer’s primary purpose in making the payment was to compensate Mr. Bikowitz for his past service. To be sure, some portion of the payment might have been ascribed to the noncom-pete and consulting provisions of the termination agreement. In Demont, the various post-termination payments to the husband were made for specifically identified purposes. Here the payment was undifferentiated, and the parties did not present evidence from which the trial court could have separately valued the nonmarital aspect of the payment. ' Under these circumstances, we cannot conclude that the trial court erred by characterizing the payment as marital — with one caveat.
In Parry v. Parry, 933 So.2d 9 (Fla. 2d DCA 2006), we held that even when the husband’s employer had granted him restricted stock and stock options as incentives for future performance, grants that had been partially earned but had not yet vested at the commencement of the divorce proceedings were marital. We remanded with instructions to reclassify a portion of these assets as marital based on a “coverture fraction.” Id. at 14. In this case, Mr. Bikowitz’s employment began during the marriage and extended beyond the filing of the divorce petition. The *1140 portion of the payment compensating him for service thereafter was nonmarital. Therefore, we reverse the trial court’s inclusion of the entire payment in its equitable distribution. On remand, the trial court shall apply a coverture fraction to the payment and set aside the postfiling portion as Mr. Bikowitz’s nonmarital asset.
During the marriage, Mr. Bikowitz lent $75,000 to a friend, Mr. Rider. The trial court ruled that the Rider loan was a marital asset and distributed it to Mr. Bikowitz. However, there was no competent, substantial evidence to support the trial court’s $75,000 valuation of the loan. The evidence at the final hearing reflected that Mr. Rider had not repaid the loan and that there was virtually no likelihood that he ever could or would do so.
Ms. Bikowitz argues on cross-appeal that the trial court erred in valuing a fee judgment listed in her law firm’s accounts receivable at $80,000 and distributing it to her. She contends, and Mr. Bikowitz agrees, that the judgment is un-collectible. As in the case of the Rider loan, the trial court’s valuation of this asset was unsupported by the evidence. We reverse and remand with directions to value both the Rider loan and the law firm account receivable at zero.
In another point on cross-appeal, Ms. Bikowitz contends that the trial court abused its discretion by valuing her Bank of America account number 2707 as of the date that she filed her petition for dissolution of marriage. The record contains evidence of marital expenditures from the account after that date, some of which were to pay living expenses during a period in which Mr. Bikowitz was not paying temporary support, and the account balance had been substantially reduced by the time of the final hearing. Thus, it was error to charge Ms. Bikowitz with the undiminished value of this account in the equitable distribution. See Plichta v. Plichta, 899 So.2d 1283 (Fla. 2d DCA 2005). Therefore, we reverse and remand for the trial court to revisit this issue. This and the previous issues likely will require the court to rebalance its equitable distribution of marital assets.
Finally, Mr. Bikowitz argues that the trial court abused its discretion in the amount of durational alimony it awarded and in awarding any bridge-the-gap alimony or, in the alternative, in the amount of bridge-the-gap alimony awarded. We reverse the bridge-the-gap alimony award because it exceeds Ms. Bikowitz’s need as determined by the trial court. The court found that Ms. Bikowitz’s monthly income was $2500, and it awarded her $2350 per month in durational alimony. Therefore, she needed $4000 more per month in gross income to meet her need of $8850. Yet the trial court awarded her $5000 per month in nontaxable bridge-the-gap alimony. The excess $1000 per month was an abuse of discretion. On remand, the trial court shall reduce the bridge-the-gap alimony award by $1000 per month.
Except as provided above, we affirm the final judgment.
Reversed in part, affirmed in part, and remanded with directions.
DAVIS and VILLANTI, JJ., Concur.