DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JERRY P. SAGER,**
Appellant,

v.

**CAROL SAGER,**
Appellee.

No. 4D19-1722

[March 11, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Kathleen J. Kroll, Judge; L.T. Case No. 502016DR008936.

Ralph T. White of The Law Office of RT White, Palm Beach Gardens, for appellant.

Linette M. Waterman of Waterman Law, L.L.C., West Palm Beach, for appellee.

MAY, J.

The former husband appeals a final judgment of dissolution. He argues the trial court erred in its: (1) unequal distribution of assets; (2) award of lump sum alimony; (3) award of income from the former husband's businesses; and (4) requirement that the former husband purchase life insurance. We agree with him on issues one and four and reverse in part. We affirm on issues two and three without further comment.

The parties were married in 1982. In 2016, the former husband filed a verified petition for dissolution of marriage. The former wife filed an answer and counter-petition. The case proceeded to trial.

### *The Trial*

The former husband worked as a mortgage broker/investment banker and the former wife worked as an early childhood schoolteacher. They lived in New Jersey for much of their marriage. They moved to Florida and purchased two houses; one would become the marital home and the other

was used as a rental property. Both homes had accompanying club memberships.

The former wife moved out of the marital residence in May 2016. The parties entered into an agreement concerning temporary alimony, health insurance, and distribution of some assets. The former husband remained in the marital home and continued to utilize the club membership. The monthly club statements reflected significant sums spent using the membership.

By the time of trial, the former husband was 72 years old and retired. He claimed his only sources of income were his monthly social security benefits and rent from the second property. Both before and after the parties' separation, the former husband managed and/or owned several business entities. He testified about his declining health. He no longer owned a life insurance policy.

The former wife was 66 years old. She lived with her sister, but also spent time with a boyfriend. She did not pay rent or living expenses at either location. She did however pay a monthly car lease. In 2018, she purchased a car by trading in the vehicle she owned when the parties separated.

The former wife did not have a college degree. She was employed as an early childhood schoolteacher in New Jersey. She also worked as a substitute teacher during the summer. She received a modest social security benefit.

The trial court found the former husband's explanation of his accounts and the transfer of funds among them to be unclear. It appeared he was not forthcoming. The court further found the former husband "dissipated his businesses, concealed assets, misled the court, and obfuscated the facts concerning his businesses."

The trial court ordered an unequal equitable distribution of the parties' assets. The court ordered the parties to sell the marital home and rental property. It required the husband to maintain them both until sold. It distributed a disproportionate share of the proceeds from the sale of the marital home to the former wife. If the former husband delayed in selling either house, then the equitable distribution would not be calculated at an 80/20 split.

If the sale of the rental property did not cover the mortgage, then the former husband was to cover the difference between the net proceeds and

the amount owed.  If the sale resulted in a profit, the former wife would "receive a disproportionate share of the proceeds from the sale of the rental home in order to allow for an equitable distribution."

The trial court ordered the parties to equally split the bank accounts under the former husband's name and/or his business entities at the time the parties separated.  The trial court also ordered the parties to "equally split all business assets and income of all current businesses."  And, it ordered the former husband to secure a life insurance policy of at least $250,000 with the former wife named as beneficiary.  The trial court awarded the former wife a lump sum alimony.

The former husband moved for rehearing and to amend the final judgment.  The court denied the rehearing, but amended the final judgment to permit the former husband to remain in the marital home until sold.  The former husband now appeals.

### *The Appeal*

"[Appellate courts] review a trial court's equitable distribution of marital assets and an award of alimony for abuse of discretion."  *Marshall-Beasley v. Beasley*, 77 So. 3d 751, 754 (Fla. 4th DCA 2011).  "The final distribution of marital assets, whether equal or unequal, must be supported by factual findings based on substantial competent evidence."  *Franklin v. Franklin*, 988 So. 2d 125, 126 (Fla. 2d DCA 2008) (quoting *Guida v. Guida*, 870 So. 2d 222, 224 (Fla. 2d DCA 2004)).

- *Equitable Distribution*

Section 61.075, Florida Statutes, which governs equitable distribution of marital assets and liabilities, states in pertinent part:

> In any contested dissolution action wherein a stipulation and agreement has not been entered and filed, any distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in subsection (1).  The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following . . . .

Subsection (3) then enumerates the required written findings.  Subsection (1) enumerates the factors to be considered in rendering those findings.

3

Typically, "[a] final judgment that fails to identify and value all of the parties' marital assets and liabilities and that fails to distribute them equitably between the parties must be reversed." *Tritschler v. Tritschler*, 273 So. 3d 1161, 1163 (Fla. 2d DCA 2019). However, "[t]he trial court 'may make an unequal distribution of assets, provided the court supplies a specific finding of fact to justify its unequal distribution.'" *Goley v. Goley*, 272 So. 3d 800, 802 (Fla. 1st DCA 2019) (quoting *Hardee v. Hardee*, 929 So. 2d 714, 715–16 (Fla. 1st DCA 2006)); *see also* § 61.075 (1), Fla. Stat.

The former husband first argues the trial court erred in failing to value the marital home, indicate the split in proceeds between the parties, and make findings on each factor in section 61.075(1). We agree in part.

Here, the trial court identified the marital home as a marital asset. It listed all the factors in section 61.075(1) and stated the former wife was "entitled to a greater percentage of the proceeds from the marital home based on one or several of the factors." It found the former husband "dissipated his businesses, concealed assets, misled the court, and obfuscated the facts concerning his businesses. This gives rise to the level necessary to support an uneven distribution." It found the former husband failed to disclose financial information, moved large sums of money from marital accounts, engaged in lavish spending, and dissipated marital funds. It found the former husband took substantial tax deductions, gave away large sums of money as gifts, and recklessly spent marital funds.

But, the court did not place a value on the marital home, nor clearly apportion the sale proceeds between the parties. *See Wagner v. Wagner*, 61 So. 3d 1141, 1143 (Fla. 1st DCA 2011); *Lift v. Lift*, 1 So. 3d 259, 260 (Fla. 4th DCA 2009) (reversing trial court for failure to make specific findings of fact identifying and valuing parties' assets).

The trial court indicated that "in the event that [the former] [h]usband delay[ed] the sale of the marital home, then the equitable distribution will not be calculated at a[n] 80/20 split between [the former] [h]usband and [the former] [w]ife." That might give rise to an assumption of an 80/20 split, but the split must be articulated, not assumed. And, it is unclear who gets the 80 or 20 percent.

The former husband next argues the trial court failed to identify the disproportionate share of the proceeds each party was to receive from the sale of the rental property. He also argues the trial court failed to provide a rationale as to why the former husband should pay any loss on the property alone.

Here, the trial court valued the rental property at approximately $220,000, but recognized it had a mortgage of approximately $304,000. The order stated that

> in the event that any money is due to complete the sale of the rental property, then [the former] husband shall contribute his own personal funds at the closing of the sale of the rental property to cover the difference between net proceeds from the sale and the amount owed to the lender(s) holding liens against the property. If the rental property does yield a profit from the sale of said home, then [the former] wife shall receive a disproportionate share of the proceeds from the sale of the rental home in order to allow for an equitable distribution . . . .

The trial court clearly identified the rental property as a marital asset, but failed to articulate how the proceeds from the asset's sale were to be apportioned. The order provides an example of a 70/30 split, but then references paragraph C., which is the unclear 80/20 distribution of the proceeds from the sale of the marital home.

One thing is clear, the court intended an unequal distribution of assets, and provided reasons for this unequal distribution. But, it failed to identify the value of the marital home and the percentages to be apportioned. We therefore reverse and remand the case to the trial court to place a value on the parties' marital home, clearly identify the apportionment of the sale proceeds of both the marital home and the rental property (should a profit be realized), and explain how it reached those conclusions.

- *Life Insurance*

In his fourth issue, the former husband argues the trial court erred in requiring him to obtain life insurance naming the former wife as beneficiary without evidentiary support or the requisite findings on the former husband's insurability and ability to purchase a policy. The former wife responds the trial court correctly required the former husband to obtain the life insurance policy to secure the alimony due her.

We review a trial court's decision concerning life insurance policies for an abuse of discretion. *Nichols v. Nichols*, 907 So. 2d 620, 623 (Fla. 4th DCA 2005).

"Courts may require that . . . alimony awards be secured by life insurance on the life of the obligor." *Alpha v. Alpha*, 885 So. 2d 1023, 1033 (Fla. 5th DCA 2004); *see also* § 61.08 (3), Fla. Stat. "[H]owever, the trial court must make specific evidentiary findings regarding the availability and cost of insurance, the obligor's ability to pay, and the special circumstances that warrant the requirement for security of the obligation." *Zvida v. Zvida*, 103 So. 3d 1052, 1054 (Fla. 4th DCA 2013) (quoting *Foster v. Foster*, 83 So.3d 747, 748 (Fla. 5th DCA 2011)).

"Such circumstances have been found where the wife would be left in dire economic straits upon the death of the husband." *Richardson v. Richardson*, 722 So. 2d 280, 281 (Fla. 5th DCA 1998). It may also be used "when the recipient spouse is disabled, elderly, or has such limited employment skills that the death of the former spouse would cause the survivor to depend upon welfare or the generosity of others." *Lapham v. Lapham*, 778 So. 2d 487, 489 (Fla. 5th DCA 2001) (quoting *Kearley v. Kearley*, 745 So. 2d 987, 990 (Fla. 2d DCA 1999)). The failure to make the necessary findings in support of the maintenance of life insurance is reversible error. *Zvida*, 103 So. 3d at 1054.

Here, the trial court found the former wife's current financial assets were insufficient to sustain her if the former husband died. She has no investment or retirement accounts, lives paycheck to paycheck, and has incurred attorney's fees as a result of the former husband's failure to accurately report his financial status. The former husband testified he no longer had a life insurance policy, his income was limited, and he had significant health issues.

The trial court made findings of the requisite special circumstances warranting the life insurance, but the final judgment and record are devoid of any findings regarding the current availability and cost of a policy and the former husband's ability to pay for it. We therefore reverse and remand the case to the trial court to determine the availability, cost, and the former husband's ability to pay for life insurance.

*Reversed and Remanded.*

LEVINE, C.J., and GERBER, J., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

6