QUINCE, Judge.
Jody Gerard, the former husband, appeals the trial court’s award of permanent periodic alimony and the distribution of assets and liabilities in this dissolution of marriage action. We affirm the award of permanent periodic alimony but remand to the trial court to reconsider the amount of the award.
The Gerards were married in 1982 in Albany, New York, and separated in February 1993. Three children were born of this union, who were ages 11, 9 and 4 at the time of the final hearing. Prior to the marriage, the husband worked as a building contractor and in jobs related to the medical profession. He developed an interest in medicine and unsuccessfully applied for admission to several medical schools. The wife encouraged him to continue applying despite his many rejections, and he was eventually accepted into medical school in Grenada. The wife had expressed an interest in becoming a nurse and had attended college for several years prior to the marriage.
After one semester of medical school in Grenada, the husband was admitted to Albany Medical College, largely through the efforts of the wife and her family. The parties lived in Albany from 1983 to 1987 while the husband attended medical school. During this period, the wife worked part-time in various jobs. The parties together formed a janitorial chemical distribution company to generate income. The wife helped to build vat platforms, bought materials, and assisted in clerical and bookkeeping duties. During this period, two of the children were born, and the wife was their primary caretaker.
In 1987 the parties moved to Pittsburgh, Pennsylvania, for the husband’s residency. The wife attended Allegheny Community College on a part-time basis, and cared for the minor children. She was not employed outside of the home. During the first year of the residency, the husband was not allowed outside employment. After that first year, he began moonlighting at other hospitals in the emergency medical field. This moonlighting continued until 1990 when his residency was completed and the parties moved to Sarasota, Florida.
The move to Sarasota occurred when the husband obtained a position at Manatee Memorial Hospital as an emergency room physician, the job he held at the time of the final hearing. The parties’ third child was born during this time, and the parties bought an expensive home. The husband continued his pattern of moonlighting by working with Acute Care Specialists in Ft. Pierce, Florida. After the contract with Acute Care was terminated, the husband secured a job with Fawcett Memorial Hospital in Port Charlotte, Florida. That contract was terminated prior to the final hearing in this cause. The *188 husband testified he has no plans to secure a second job because he is suffering from stress and fatigue.
The husband argues the trial court erred in awarding the wife permanent periodic alimony. He opines the court should have awarded rehabilitative alimony only or a combination of rehabilitative and permanent periodic alimony. We find no error in the award of permanent periodic alimony but remand to the trial court on the issue of the amount of the award.
Section 61.08, Florida Statutes (1993), authorizes a trial court to grant alimony in the form of rehabilitative or permanent to either party in a dissolution of marriage proceeding. Such granting of alimony may be in the form of periodic payments, lump sum or both. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). This was a ten year marriage where the parties lived an extravagant life style, albeit above their means. The wife has no assets and has not worked outside of the home since 1987. The only source of income is the husband’s employment at Manatee Memorial Hospital.[1] The wife has custody of the three minor children and has been the primary caregiver throughout the marriage. In addition, the wife was very supportive of the husband’s efforts to obtain his medical degree. The wife attended junior college and expressed an interest in becoming a nurse; however, she does not have a nursing degree and is not employable in that field.
Under these circumstances, the trial court’s award of permanent periodic alimony was not improper. The record establishes the wife’s need for support and the husband’s ability to pay. Nelson v. Nelson, 588 So.2d 1049 (Fla. 2d DCA 1991). There was no abuse of discretion in awarding permanent alimony. Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992); Dwyer v. Dwyer, 513 So.2d 1325 (Fla. 2d DCA 1987).
Although there was no error in the award of permanent alimony, the amount of the award is excessive under the present circumstances. While the wife has no present ability to contribute to the support of herself and the children or to help reduce the marital debt, the distribution of assets and liabilities under the present financial situation is one-sided, leaving the husband without sufficient funds for his own living expenses or without funds to pay other expenses ordered by the trial court. Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990).
In addition to paying $3,287.00 in child support and $4,000.00[2] in alimony per month, the husband is required to pay the student loan debt at $1,222.38 per month. He is paying the 1992 marital tax debt of $1,625.00 per month, and he was ordered to pay the 1993 marital tax debt.[3] As additional child support the husband must pay preschool tuition for the youngest child. He must pay all medical expenses for the children not covered by insurance, and maintain health insurance on the wife for a four year period. Not only is the husband required to pay the mortgage on the marital home until it is sold, but he must also make the payments for electricity, water, sewer, garbage and telephone. He is required to pay for the needed repairs, up to $20,000.00. Although the amount is yet to be determined, the husband must pay the wife’s reasonable attorney’s fees and costs.[4]
*189 With all of these undefined expenses, it is difficult to determine how much of the husband’s income is left after all obligations are deducted. We do know that the husband has a net monthly income of $15,176.00. The husband’s obligations that are fixed monthly payments total $9,980.38 (mortgage payments; student loan payments; 1992 IRS payments; child support). After deduction for these fixed obligations, the husband has $5,195.62, out of which he must pay his own living expenses and all of the nonfixed expenses delineated above (utilities and taxes for the marital home; preschool tuition; medical expenses; repairs on the home; attorney’s fees; payments on the 1993 taxes and tuition for the wife). A conservative estimate of these nonfixed expenses is $3,800.00.[5]
The husband is left with less than $2,000.00 of his monthly income to pay his own living expenses. The record reflects the husband has no assets beyond his earnings that can be used to make these payments. The husband cannot realistically be expected to keep current on all of these obligations ordered by the trial court. See Wrona v. Wrona, 592 So.2d 694 (Fla. 2d DCA 1991); Degen v. Degen, 618 So.2d 365 (Fla. 4th DCA 1993). We do not want to create a situation where the long-term financial well-being of all parties would suffer because the husband could not presently fulfill his support obligations. The amount of alimony should be a figure the husband can be expected to pay considering the other not insubstantial financial payments he has been ordered to make.
On remand the trial court should look at the parties’ current financial circumstances, including such factors as whether the marital home has been sold and whether any of the student loans or tax obligations have been paid. In this new calculation, the court should take into consideration the amount of attorney’s fees awarded that the husband is obligated to pay.
We, therefore, affirm the trial court’s award of permanent periodic alimony. We remand to the trial court to reconsider the amount of the award in light of the factors outlined in this opinion.
CAMPBELL, A.C.J., and SCHOONOVER, J„ concur.

. In the trial court, the wife argued the husband was underemployed and additional income should be imputed to him because he had traditionally held a second job. The trial judge correctly found the husband was not underemployed and should not be required to take on, even if available, other stressful emergency room work.

. We are mindful that the alimony will begin only after the marital home has been repaired and sold. In the interim, the husband is responsible for the mortgage and all other expenses associated with the house. The mortgages on the home total $3,846.00 monthly.

. At the time of the final hearing the husband had liquidated a marital retirement account of $50,000.00 and paid the monies realized toward the 1993 tax liability. His accountant estimated an additional $102,000.00 would be due for 1993 taxes. The accountant further opined, assuming IRS cooperation, the new tax debt could be paid over a four-year period at $2,600.00 per month.

. After the home is sold, the husband will also be responsible for the wife’s reasonable education costs to obtain her bachelor’s degree up to $5,000.00 per year for four years.

. This figure is arrived at by adding the estimated $2,600.00 per month for 1993 taxes the husband's accountant testified to and amounts indicated on the parties' financial affidavits for household expenses, etc.