745 So.2d 987 (1999)
Robert T. KEARLEY, Appellant,
v.
Sharon S. KEARLEY, Appellee.
No. 97-05405.
District Court of Appeal of Florida, Second District.
September 8, 1999.
Joryn Jenkins, Tampa, for Appellant.
Allyson Hughes of Allyson Hughes, P.A., New Port Richey, for Appellee.
PER CURIAM.
Appellant, Robert T. Kearley, challenges the final judgment of dissolution of marriage which awarded appellee, Sharon S. Kearley, $1400 a month as permanent periodic alimony. We reverse the alimony award because we find that the trial court abused its discretion in awarding alimony that exceeds the appellant's ability to pay. Furthermore, because a provision of the judgment of dissolution, which requires the appellant to carry life insurance "as security for his alimony obligation," is unclear as to the protection afforded, we reverse and remand with directions.
Appellant and appellee were married on September 1, 1967, and appellant filed a *988 petition for dissolution of marriage on April 28, 1995. The parties were separated during the last seven years of their marriage. On December 30, 1996, a final hearing was held on the dissolution petition.
Testimony revealed that during the parties' period of separation they entered into several support agreements.[1] The last agreement regarding monthly support, executed in November 1993, provided that appellant was to pay the appellee $1000 per month for support. Regardless of the $1000 monthly support agreement, both parties stipulated that the appellee's actual maintenance would be fixed at $900. The $1000 amount was arrived at to allow appellee the ability to satisfy loan requirements with a mortgage lender for the purchase of a separate residence for herself.
At the time of the hearing in December 1996, according to the financial affidavit, appellant's gross monthly income was $3,892.95. Appellee's gross monthly income was $1,717.25, which included $900 a month provided by appellant. The trial court entered a final judgment of dissolution of marriage which, among other things, concluded that appellant had the ability to pay $1400 a month in permanent periodic support. Furthermore, the final judgment indicated that appellant was to maintain $93,000 in life insurance with appellee as the beneficiary "as security for the permanent periodic alimony." Appellant filed a timely notice of appeal from the trial court's final judgment.
We conclude that the trial court abused its discretion in awarding the appellee $1400 per month in alimony. According to the financial affidavit, appellant's monthly net income is $3,380.41. After deducting his average monthly expenses from his net income, including the $1400 alimony, appellant is left with a deficiency of $818.59 per month. According to appellee's financial affidavit, filed at the time of the hearing, the addition of $1400 to appellee's net income will increase her monthly net income to $2,217.25. Appellee stated her monthly obligations at $2,629.19, thus asserting a deficiency of $411.94 per month. However, appellee admitted she was able to remain current on her obligations during separation.
It appears that both parties remain in a situation where their income cannot cover expenses. Nonetheless, placing appellant in a greater income deficiency will not solve either party's financial difficulties. See Gerard v. Gerard, 656 So.2d 186 (Fla. 2d DCA 1995); Cook v. Cook, 574 So.2d 281 (Fla. 2d DCA 1991). Instead, the face amount of the parties' last support agreement during separation is closer to an appropriate award.
Additionally, sufficient findings are contained in the final judgment to justify a requirement for life insurance as alimony security. However, the final judgment merely states that "the husband shall provide life insurance on his life in the amount of $93,000 as security for his alimony obligations." It cannot be ascertained whether the entire policy proceeds would be paid over to the appellee in the event of appellant's death or only so much as to compensate her for alimony arrearage. Either arrangement may be appropriate, but those terms must be certain. See § 61.08(3), Fla. Stat. (1997). See also Cifrian v. Cifrian, 715 So.2d 1068 (Fla. 4th DCA 1998).
We reverse the trial court's award of alimony to appellee in the amount of $1400 a month and direct the trial court to reconsider an award of periodic permanent alimony in accord with the parties' last agreement. We also reverse the trial court's award regarding appellant's life insurance policy with directions that, upon remand, the trial court should specify as to how the life insurance proceeds are to be *989 paid. We affirm the trial court's final judgment in all other aspects.
Affirmed in part; reversed and remanded in part.
WHATLEY and GREEN, JJ., Concur.
ALTENBERND, A.C.J., Concurs specially with opinion in which WHATLEY, J., Concurs.
ALTENBERND, Acting Chief Judge, Concurring.
I concur in the court's decision. This is a long-term marriage, and the wife is entitled to permanent alimony. She has a disabling back injury and her disability payments are her only source of income other than alimony.
I do not wish this opinion to suggest that in setting an amount of alimony the trial court is always bound by the parties' separation agreement. In this case, the parties had a long, formal separation, governed by a series of separation agreements. The last agreement, prepared by an attorney, happened to establish an amount of alimony at the upper end of what was reasonable under their circumstances. As a result, this court has directed the trial court to reconsider an award consistent with the last agreement. Given the wife's condition, on remand the trial judge may wish to consider the couple's present circumstances when setting the amount of alimony.
This case presents a good example of the confusion created by Florida's ill-defined approaches to life insurance in divorce proceedings. Trial courts can approach life insurance from at least three different perspectives. First, the cash surrender value of life insurance purchased during the marriage can be treated as a marital asset without restricting the owner's future ability to select beneficiaries. Second, by compelling the policy's owner to select the former spouse as beneficiary, the trial court can use the policy as security to indemnify the former spouse for any unpaid obligations arising from the final judgment, typically for alimony or child support due at the time the payor spouse dies. Third, the trial court can compel the owner to select the former spouse as beneficiary in order to minimize future economic harm to the surviving family upon the untimely death of a spouse who paid alimony or child support during his or her life. Chapter 61 does not give trial judges any meaningful guidance concerning when or how to use these approaches. I continue to believe that the trial courts need more guidance especially concerning the third approach. See Kowalczyk v. Kowalczyk, 627 So.2d 591 (Fla. 2d DCA 1993) (Altenbernd, J., concurring).
Mr. Kearley has two life insurance policies. One is apparently a term policy provided by his employer. The other is a whole life policy providing a $93,000 death benefit and a cash surrender value of about $4,000. This policy is the one involved in this appeal. Significantly, the couple had already divided the cash surrender value equally prior to the delayed divorce proceeding.
If the $93,000 whole life policy in this case is treated solely as a marital asset, it would appear that an equitable distribution was achieved when the parties themselves divided the cash surrender value equally. Once the cash surrender value was divided, requiring the wife to remain a beneficiary for the full death benefit cannot be justified as a matter of equitable distribution, at least in this case.
If the life insurance policy is used as security for unpaid obligations arising from the final judgment in this case, it can secure only alimony because this couple has no minor children and there is no lump sum payable as a part of the wife's equitable distribution. The obligation to pay permanent periodic alimony will end when Mr. Kearley dies. Logically, for this purpose, there is no justification for the former spouse, as beneficiary, to receive benefits from such a policy beyond those *990 necessary to indemnify her for the unpaid alimony.[2]
I am inclined to believe that the legislature did not anticipate that life insurance would play a role beyond indemnity for alimony when it enacted section 61.08(3), Florida Statutes.[3] I recognize, however, that the supreme court in Sobelman v. Sobelman, 541 So.2d 1153 (Fla.1989), decided that section 61.08(3), Florida Statutes (1985), was ambiguous and allowed a trial court to order a spouse to maintain a former spouse as a beneficiary on a life insurance policy for purposes other than securing alimony payments due at the time of the death of the payor.
Sobelman essentially authorizes the third approach to life insurance without providing sufficient guidelines for its use. Despite our best judicial efforts over the last decade, I see little evidence that we have established predictable rules for this third usage of life insurance. This case and several earlier cases suggest that life insurance should be used to minimize such future economic risks primarily when the recipient spouse is disabled, elderly, or has such limited employment skills that the death of the former spouse would cause the survivor to depend upon welfare or the generosity of others. See Edwards v. Edwards, 730 So.2d 711 (Fla. 4th DCA 1999) (wife suffering from chronic back problems and multiple sclerosis type symptoms); Richardson v. Richardson, 722 So.2d 280 (Fla. 5th DCA 1998) (appropriate when survivor would be left in "dire straits"); Sasnett v. Sasnett, 679 So.2d 1265 (Fla. 2d DCA 1996) (72-year-old husband's sudden demise would seriously jeopardize 59-year-old wife's well-being, as she suffered from serious health problems); Kowalczyk, 627 So.2d at 592 (Altenbernd, J., concurring) (wife's earning capacity, even after rehabilitation, will not provide enough income to live even near life-style established during marriage); Sobelman, 541 So.2d at 1154 n. 1 (citing with approval Fiveash v. Fiveash, 523 So.2d 764 (Fla. 1st DCA 1988) and Clark v. Clark, 509 So.2d 364 (Fla. 4th DCA 1987) (wherein wives were in ill health and for all practical purposes unable to obtain employment)). This suggestion, however, is not an express holding in any case nor the content of any statute. I fear that Sobelman has caused a somewhat random group of former spouses to buy or maintain life insurance as a sort of post-mortem alimony annuity.
I suspect that a subcategory of cases involving permanent alimony probably exists in which it would be useful for the alimony to be measured by the life of the recipient rather than the payor and, therefore, for the alimony payments after the payor's death to be secured by life insurance or some other adequate security. I also believe there is a larger group of cases involving child support in which the support obligations of each parent should continue until the child is an adult, and any payments beyond the parent's untimely death should be secured by life insurance or other security. Such public policies, however, involve relatively complex issues and are not well suited to judicial solution. They also require input from the insurance companies that must assess underwriting considerations, such as insurable interest, before marketing affordable coverage specifically suited for these needs. See generally § 627.404, Fla. Stat. (1997); Lopez v. Life Ins. Co. of Am., 406 So.2d 1155 (Fla. 4th DCA 1981), approved, 443 So.2d 947 (Fla.1983).[4] I am increasingly convinced *991 that the legislature should consider a statutory amendment to chapter 61 to address these issues.
NOTES
[1] Monthly support began at $650 per month and was raised to $800 per month and then finally to $900 per month.
[2] In this sense, life insurance to secure alimony is similar to mortgage insurance or other forms of credit life insurance. See 44 C.J. S. Insurance § 240 (1993).
[3] Section 61.08(3), Florida Statutes (1997), states: "To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose."
[4] See also Hopkins v. Hopkins, 328 Md. 263, 614 A.2d 96 (1992); John J. Michalik, Annotation, Divorce: Provision in Decree that One Party Obtain or Maintain Life Insurance For Benefit of Other Party or Child, 59 A.L.R.3d 9 (1974).