931 So.2d 271 (2006)
Ronald S. SCHUMAKER, Appellant/Cross-Appellee,
v.
Theresa L. SCHUMAKER, Appellee/Cross-Appellant.
No. 5D05-2073.
District Court of Appeal of Florida, Fifth District.
June 23, 2006.
*272 Cindy L. Lasky, of The Lasky Law Firm, Jacksonville, for Appellant/Cross-Appellee.
Regina W. Sargeant and Patrick T. Canan of Canan Law, P.A., St. Augustine, for Appellee/Cross-Appellant.
SHARP, W., J.
The former husband, Ronald Schumaker, appeals and the former wife, Theresa Schumaker, cross appeals from a dissolution of marriage judgment. We affirm in part, and reverse and remand in part, for further clarification or consideration.
The parties married in 1990 and Theresa filed a petition for dissolution of marriage in January of 2004. Three minor children were born to their marriage. Pending rendition of a final judgment, the trial court granted Theresa's motion for temporary support, temporary custody of the children, and exclusive use of the marital residence. Ronald was ordered to pay child support as well.
With respect to visitation, the court fashioned an unusual scheme: Ronald was granted the right of first refusal in lieu of the children being placed in day care or with other family members while Theresa was at work. The temporary order dated May 24, 2004, provided:
The Husband shall be granted the right of first refusal in lieu of any day care or other extended family members watching the children while the Wife is at work. The Wife has indicated that she *273 will alter her work schedule to a daytime schedule if awarded exclusive use and occupancy of the marital home and that currently, she works at night to avoid any contact with the Husband. The Wife shall provide the Husband, to the extent practicable, a schedule at least ten days in advance of her work schedule so that each party can make the appropriate plans to watch the minor children, especially when the Wife is at work. Otherwise, the Husband shall have visitation every other weekend beginning Friday at 6:00 pm until Sunday at 6:00 pm.
The final hearing was held on January 27, 2005 and February 18, 2005. The court rendered its Final Judgment on March 23, 2005. The court granted Theresa residential custody of the children, with shared parental responsibility. It made detailed fact findings in support of this award. The Final Judgment stated, after "ORDERED AND ADJUDGED:"
[A]nd the HUSBAND shall have reasonable visitation as ordered by this court on May 24, 2004.
The trial court found the parties had experienced a moderate to low standard of living during their marriage. They lived in a manufactured home valued at $140,000. Ronald had been "sporadically employed" during the marriage and they had an enormous credit card debt.
The court denied Theresa's requests for alimony and additional attorney's fees. It noted she was employed full time, 37.5 hours per week and earned $9.00 per hour. It found Ronald earned between $40,000 and $42,000 per year and that he did not have the ability to pay alimony. It denied Theresa any attorney's fees, not because of lack of need on her part, but because of Ronald's inability to pay, and the fact that he had paid $7,500 in temporary fees.
With regard to equitable distribution of assets and liabilities, the court assigned Ronald $32,774.68 in credit card debt and Theresa $23,667.97. It found the parties' retirement and deferred compensation plans were marital and assigned each party their own funds. It roughly equalized distribution of the parties' personal property.
The parties' major asset, the marital home, was intended to be equally divided, but the provision dealing with its disposition is complicated. The court found the home has an equity of $55,000 and is in need of remodeling. The court set aside $10,000 for remodeling, if the home is placed for sale. It awarded the home to Theresa and found each party has an interest in the home of $75,000, and at least a net of $37,000. It ruled that Theresa could sell the home at a reasonable price of 90% of the stipulated value and equally divide the proceeds. The costs for remodeling shall be held in escrow and if not used, should be distributed on a 50/50 basis. It gave Theresa six months to sell or refinance the home. After six months, Ronald was to have the opportunity to relocate into the home and sell or refinance it under the same terms. However, the court concluded that it would not order an involuntary sale of the home while the parties had minor children.
The parties filed motions for rehearing on April 1, 2005 and March 30, 2005, which the trial court denied. The trial court granted Theresa's motion for further consideration and set a hearing date of July 18, 2005. The hearing was held October 26, 2005 and an order rendered November 2, 2005. Theresa presented evidence that she was unable to refinance the marital home within the six months set out in the judgment because Ronald failed to pay off his assigned credit card debts, which affected her credit rating.
*274 However, Ronald had filed his notice of appeal June 22, 2005 and Theresa filed her cross appeal July 6, 2005. Because the trial court had lost jurisdiction to deal with the issues,[1] it did not rule on the merits other than to suspend enforcement of the provisions dealing with Theresa's obligation to refinance or sell the marital home within six months.

I. Visitation
Ronald's point on appeal deals solely with visitation. He argues that the trial court abused its discretion by failing to integrate the visitation language into the final judgment rather than referencing it. Once a final judgment of dissolution is rendered, the final judgment supersedes any prior temporary orders. Bell v. Bell, 664 So.2d 1075 (Fla. 4th DCA 1995). See also Sims v. Sims, 846 So.2d 1188, 1189 (Fla. 4th DCA 2003); Roth v. Roth, 658 So.2d 1225, 1226 (Fla. 4th DCA 1995).
In this case, it appears any defect, if there is one, is purely a scrivener's error. The trial court clearly referenced the provisions of the temporary order and intended to incorporate them into the final judgment. Upon remand, the trial court may expressly incorporate them by reference, or repeat them in the final judgment.
Ronald also argues that the provisions of the temporary order are incomplete because they do not address visitation during holidays and other special occasions and extended school breaks such as the summer. It is inappropriate to leave such issues unresolved for future adjudication. Del Castillo v. Ralor Pharmacy, Inc., 512 So.2d 315, 318-319 (Fla. 3d DCA 1987). See also Hansen v. Hansen, 911 So.2d 159, 160 (Fla. 3d DCA 2005).
The granting of such a limited visitation to Ronald is problematic. However, trial courts have discretion to order visitation based on the facts and circumstances of each case. Keesee v. Keesee, 675 So.2d 655 (Fla. 5th DCA 1996). In this case, the evidence presented below and as expressly found by the trial court, justifies such a limitation. See Williams v. Williams, 923 So.2d 606 (Fla. 2d DCA 2006); Vaughn v. Vaughn, 714 So.2d 632 (Fla. 1st DCA 1998). For example, in the final judgment the court expressed its concern about Ronald's influence on the children:
The Father has throughout these proceedings attempted to parentally alienate the minor children and the Court has grave concerns about the children having primary residence ever with the Father. The Father has consistently made degrading and obscene comments about the Mother. The Mother had a previous child out of wedlock prior to this marriage and the Father has made sure the minor children of this marriage know the circumstances of their half-sister's. . . out of wedlock birth and routinely refers to the Mother in derogatory terms. The Father has told the minor son ... that he does not have to listen to his mother and made derogatory statements about . . . half sister.
In other paragraphs of the Final Judgment, the trial court noted additional degrading comments Ronald has made about Theresa in front of the children which do not need to be repeated. It noted, "[t]he Court has serious concerns about the moral fitness of the Father in consideration of his actions in alienating the children from the Mother." It found that Ronald made promises to the children that they could attend an expensive private school, which *275 he has no reasonable ability to pay for, and blamed Theresa because she cannot afford to pay for or carryout such a promise. It found that Ronald further alienated Theresa by having the children count out money for temporary attorney's fees the court awarded her and he told the children the money could have been used to pay for the private school. It concluded that Ronald is in need of in-depth parental alienation counseling. "Further, his actions toward the Mother will cause this family to need long, intense family counseling."
In addition, the court found Ronald filed false and misleading domestic violence allegations against Theresa during this litigation.
The Father has misled this Court in an attempt to gain custody over the Mother. One of the minor children referred to the Father as faking an injury of domestic violence.... The Husband made allegations that were misleading and false and refuted by neutral witnesses.
Rather, the court found that some child abuse and domestic violence in the case has been committed by the Father on the family and against the Mother.
Based on these findings, the court made the following determination that it has:
[G]rave concerns as to whether shared parental responsibility would be detrimental to the children in light of the Father's parental alienation, but the court wants to give the Father a chance to `clean up his act,' cease parental alienation and promote the Mother in the eyes of the children. The family is in need of counseling and the court appoints and requests the children's current counselor, Larry Wagner, along with Dr. Risch, the child custody evaluator, to recommend a third party for immediate family counseling and any necessary parental alienation counseling for the Father. The counselor shall use this Final Judgment as a historical guide to the extent of counseling deemed necessary. Clearly, this family is in crisis and in need of immediate therapeutic intervention.
We cannot find the trial court breached its discretion in granting Ronald limited visitation rights under these circumstances. The inference is clear, that should through counseling or the passage of time, Ronald's behavior ameliorate, the court would consider expanding his visitation privileges.

II. Cross AppealAward of Marital Home; Alimony.
Theresa argues on appeal that she should have been awarded alimony and that it should have been in the form of the marital residence. Alternatively, she argues exclusive possession of the marital residence should have been made to her as an incident of child support. McMaster v. McMaster, 379 So.2d 189 (Fla. 4th DCA 1980). Further, the provision dealing with the marital residence is unclear and unworkable.
We find no breach of discretion in the court's refusal to award alimony. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). This was not a long-term marriage. Both parties are healthy, young, and able to be self-supporting and the marital standing of living was a "financial struggle made worse by the Husband's lack of consistent work, long periods of unemployment and massive credit card debt."
However, we agree that there are many unanswered questions regarding the disposition of the marital residence. What happens if Ronald also fails or refuses to refinance or sell the marital home? Where do the children and Theresa live in *276 the interim? Which party is responsible for the mortgage, insurance and upkeep on the home? Should Theresa be reimbursed for the mortgage payments, insurance, taxes and expenses of upkeep she incurred during and since the dissolution? The court has said it will not force a sale of the home as long as the children are minors. What other remedy is there if neither is willing or able to comply with the final judgment?
One solution would be to grant Theresa exclusive possession of the marital residence until the children reach the age of majority or she remarries. See Cooper v. Cooper, 760 So.2d 1048 (Fla. 2d DCA 2000); Cabrera v. Cabrera, 484 So.2d 1338 (Fla. 3d DCA 1986); section 61.075(1)(h), Fla. Stat. (2005). As Theresa points out, the children need the continuity and stability of their home during this time of crisis. She is able to afford the mortgage payment ($700.00 per month), but would not be financially able to purchase a comparable residence, if it is sold. Absent compelling financial reasons, the custodial parent should be awarded exclusive use and possession of the marital residence until the children reach majority or become emancipated or the custodial parent remarries. Dehler v. Dehler, 648 So.2d 819 (Fla. 4th DCA 1995). The cost of the indirect support must be added to the amount of direct support awarded in calculating child support,[2] although that could be balanced by giving the custodial parent credit against carrying charges on the property, such as mortgages, taxes, or insurance.
Accordingly, we remand this case to the trial court for correction of the scriveners error regarding visitation and for clarification of the disposition of the marital residence or an award of exclusive possession to Theresa as an incident of child support.
AFFIRMED in part; REVERSED and REMANDED.
GRIFFIN and PALMER, JJ., concur.
NOTES
[1] See Bank One, N.A. v. Batronie, 884 So.2d 346, 348 (Fla. 2d DCA 2004); General Capital Corp. v. Tel Service Co., Inc., 212 So.2d 369 (Fla. 2d DCA 1968).
[2] Fullerton v. Fullerton, 709 So.2d 162 (Fla. 5th DCA 1998).