ALTENBERND, Judge.
 

 Thomas R. Jones appeals the Final Judgment of Dissolution concerning his ten-year marriage to Jean A. Jones. He primarily challenges the unusual award of alimony and the requirement that he obtain life insurance. We reverse on both of these issues. As explained below, we also give the trial court authority on remand to adjust the equitable distribution of both assets and liabilities because those decisions interrelated with its decision on alimony.
 

 I.
 

 Mr. Jones is approximately sixty years of age and the former wife is about ten years younger. This was a second marriage for both of them, and the duration of this marriage was approximately ten years. Mr. Jones earned about $55,000 per year, and Mrs. Jones earned about $17,000. Her child support from her first marriage for a teenager ended during the pendency of this appeal. The couple had virtually no liquid assets and short-term debt for cars and credit cards totaled about $35,000. They had a whole life insurance policy on the husband with a cash surrender value of $5000, and he had a retirement plan at work worth about $45,000. Beyond these limited assets, they owned the family home, which was proba
 
 *231
 
 bly worth about $210,000 in April 2008 when the final judgment was entered. It was subject to a mortgage loan of $140,000. Thus, the gross equity in the home was approximately $70,000.
 

 With these combined salaries and assets, the Joneses, as a single family unit, lived a modest, middle-class lifestyle. No matter what judgment a trial judge fashions in this case, the two family units created by the divorce cannot maintain the same lifestyle. Like many Floridians in these difficult economic times, the Joneses almost cannot afford to divorce.
 

 At the final hearing, Mrs. Jones’s attorney
 
 [1]
 
 asked for “permanent” alimony of $1500 per month until Mr. Jones reached the age of sixty-six. The trial court awarded this amount, but only until he reached sixty-five. Mrs. Jones’s trial attorney may have thought he was requesting “permanent” alimony, but in actuality he was requesting lump sum alimony payable in installments.
 
 See, e.g., Thilem v. Thilem,
 
 662 So.2d 1314, 1316 (Fla. 3d DCA 1995) (“To limit the duration of permanent periodic alimony or require review of the award in a certain number of years is error.”);
 
 Borchard v. Borchard,
 
 730 So.2d 748, 751-53 (Fla. 2d DCA 1999) (explaining that lump sum, or bridge-the-gap, alimony, paid over a set period, is available to assist the transition from married life to single life when permanent and/or rehabilitative alimony is not appropriate).
 

 In addition to the lump sum alimony, the trial court awarded Mrs. Jones half of the retirement account and half of the cash surrender value of the husband’s life insurance. It is unclear from the judgment whether the trial court expected Mr. Jones to cash in his life insurance policy, but he had no other ready source of cash to pay this amount to the former wife.
 

 The trial court ordered the marital home sold and ordered Mr. and Mrs. Jones to split the net proceeds. He ordered Mr. Jones to pay $5000 in attorneys’ fees for the wife within ninety days of the entry of the judgment. In the judgment, the trial court first ordered that the marital debt “is to be divided between the parties.” Later, the judgment says that the debt shall be divided between the parties “as set forth in the Equitable Distribution Worksheet, Exhibit 1 to this Final Judgment.” Exhibit 1 “divides” the debt by assigning it all to Mr. Jones.
 
 [2]
 

 Thus, the final judgment anticipated that from the sale of the home, Mr. Jones would receive $35,000, less his share of the cost of selling the home, and be obligated to pay marital debt and attorneys’ fees of $40,000. Above this, he had to pay $1500 each month to the former wife so that each of them would have approximately $3000 per month on which to live. She would also receive her half of the proceeds from the house.
 

 Finally, the judgment ordered Mr. Jones to obtain a life insurance policy within thirty days “equal in value to the total alimony [that he] is ordered to pay to [Mrs. Jones].” The amount of alimony was not calculated in the judgment, but it appears to total approximately $108,000. The trial court required that Mrs. Jones be named as the beneficiary on this policy, and the policy must be maintained until he has finished paying alimony. The judgment did not specify whether Mrs. Jones was entitled to collect the entire policy in
 
 *232
 
 the event of his death, or only the outstanding amount owed on the lump sum alimony. In other words, the judgment did not explain whether the policy only secured the alimony obligation or whether it was an asset that Mrs. Jones would receive for a six-year term. The parties entered into a statement of the evidence for use in this appeal.
 
 See
 
 Fla. R.App. P. 9.200(b)(4). It is undisputed that the trial court received no evidence on Mr. Jones’s insurability at age sixty or the cost of the insurance.
 

 II.
 

 Mr. Jones argues that the trial court abused its discretion in awarding alimony in this gray area case. Given the ages of the parties, the disparity in their income, health issues, and other factors, we cannot say that the trial court had no discretion to award some form of support to Mrs. Jones.
 
 See Berry v. Berry,
 
 992 So .2d 898 (Fla. 2d DCA 2008);
 
 Price v. Price,
 
 951 So.2d 55 (Fla. 5th DCA 2007). The fact that Mrs. Jones was seeking an odd hybrid of permanent alimony and lump sum alimony is troubling, but it is not an issue preserved or argued by either party on appeal.
 

 On the other hand, from the written closing argument submitted by Mrs. Jones’s trial attorney and from the final judgment, it is entirely apparent that the trial court’s judgment was based on the assumption that the various payments could be made by virtue of a quick sale of the family home for $210,000. Likewise, it was theorized that Mr. Jones could afford these payments because he would no longer be obligated to pay the mortgage and other expenses of owning the home. The house was not on the market and the parties had no agreement to sell this home when they went to the final hearing. There was no evidence presented to establish that the home could be sold in the manner essential to allow compliance with this judgment.
 
 [3]
 

 We conclude that the trial court did not have competent, substantial evidence to support the plan contemplated by this judgment and that the judgment otherwise places unreasonable financial obligations on the husband that he cannot fairly be expected to pay. Accordingly, we reverse the award of alimony and authorize the trial court, on remand, to alter the plan of equitable distribution in a manner that may allow the parties to live at least a little closer to the standard of living that they enjoyed while married.
 

 III.
 

 The trial court also erred in ordering Mr. Jones to obtain life insurance without evidence of insurability and evidence that, at age sixty, he can afford the premiums for that insurance.
 
 See, e.g., Smith v. Smith,
 
 912 So.2d 702, 704 (Fla. 2d DCA 2005). Admittedly, there was evidence in this case that Mr. Jones had term insurance through his employment. There was, however, no indication that this insurance would be sufficient to satisfy the court order, and it is unclear whether the trial court intended for the term insurance to be the policy used to satisfy this judgment.
 
 [4]
 
 Accordingly, the trial court cannot
 
 *233
 
 award life insurance for any purpose on remand unless it receives additional testimony.
 

 We reverse the portions of the final judgment awarding alimony and requiring life insurance. On remand, the trial court is free to take additional evidence and to adjust the equitable distribution as needed to achieve an appropriate result.
 

 Affirmed in part, reversed in part, and remanded.
 

 WHATLEY and LaROSE, JJ., Concur.
 

 [1]
 

 . The trial attorneys in this case are not the attorneys of record in this appeal.
 

 [2]
 

 . The worksheet awards the home entirely to Mr. Jones and then gives Mrs. Jones an equalizer payment of $42,817. We assume this portion of the worksheet is not incorporated into the judgment.
 

 [3]
 

 . Obviously, the housing market and home values have changed significantly while this case has been pending on appeal. We emphasize that our decision is not based on any changes in circumstances during the appeal, but only on the record at the time the final judgment was entered. On remand, the recent economic changes may require the trial court to take additional evidence and adjust the final judgment.
 

 [4]
 

 . This judgment suffers from a common malady. The insurance is either "security'' for unpaid alimony, in which case the party re
 
 *233
 
 ceiving alimony should be entitled to be named as a beneficiary only as his or her interest may appear for the limited amount of alimony unpaid by the payor at the time of death, or it is intended to be an asset of the beneficiary to provide future security beyond the time when alimony ceases due to the death of the payor. These two uses of insurance are distinctly different because one serves as security for support, whereas the other creates an asset that may be relied upon after support ends much like a retirement account or some other investment.
 
 See Massam v. Massam,
 
 993 So.2d 1022, 1025 (Fla. 2d DCA 2008) (noting that final judgments awarding life insurance to secure alimony must specify whether the policy is security for unpaid alimony entitling the receiver spouse to only a portion of the proceeds or is intended to minimize future economic harm entitling the receiver spouse to all of the proceeds);
 
 see also Kearley v. Kearley,
 
 745 So.2d 987, 989-91 (Fla. 2d DCA 1999) (Altenbernd, A.C.J., concurring) (discussing the use of life insurance as security to indemnify the receiver spouse for unpaid alimony or to minimize future economic harm upon the obligor spouse’s death). It is difficult for an appellate court to review an award of life insurance when the trial court has not explained the purpose served by the insurance.