ALTENBERND, Judge,
Concurring.
I fully concur in the opinion but write to recognize that this is a difficult case in which to establish alimony. The parties were married in their early twenties. The husband earned an engineering degree and, undoubtedly, helped support his wife through medical school. Now in their mid-forties, she is a successful physician and he is working in a fire department attempting to become a paramedic. Although dura-tional alimony might now be a better option in such a context involving healthy, well-educated parties, it was not available when this action was resolved.[1] The award of more than $47,000 per year in taxable permanent alimony to the husband seems high to me, but it is not an abuse of discretion under the applicable law and the facts of this case given the disparity of income.
Twenty years ago, I first suggested that the legislature consider statutes establish *623 ing the law applicable to life insurance in divorce proceedings. Kowalczyk v. Kowalczyk, 627 So.2d 591, 591 (Fla. 2d DCA 1993) (Altenbemd, J., concurring); see also Kearley v. Kearley, 745 So.2d 987, 989 (Fla. 2d DCA 1999) (Altenbernd, J., concurring). The situation remains much the same. See generally Jani Maurer, Use and Disposition of Life Insurance in Dissolution of Marriage, 16 Barry L.Rev. 57 (Spring 2011).
Term life insurance that has already been purchased during a marriage can rather easily be used to secure unpaid child support or alimony in the event of the death of the payor ex-spouse during the first decade following the divorce. Such a requirement, however, does create a complex designation of beneficiary because a portion of the proceeds may need to be payable as support, while the remainder of the proceeds are given to a beneficiary selected by the payor ex-spouse. Even in the context of this simple use of life insurance, the price of term life insurance can become prohibitive as parties age.
Life insurance benefits that are payable to adult children or an ex-spouse when no alimony or child support is due create more difficult issues. The annual premiums paid by the payor ex-spouse are arguably alimony payments used to create a savings component. See Mallard v. Mallard, 771 So.2d 1138, 1141 (Fla.2000) (barring alimony from including a savings component). In this case, for example, if the ex-wife dies at age sixty-five, under the language of the judgment, her adult children and their father will collectively receive a million dollars largely unrelated to their needs. These payments are a disincentive for the benefiting ex-spouses to remarry and can create what is known as a “moral hazard” affecting the insurability of the payor ex-spouse. The cash surrender value of whole life insurance creates additional issues.
It has proven virtually impossible for the appellate courts to create common law rules addressing the array of issues created by life insurance provisions in final judgments of dissolution. Family law attorneys and circuit court judges need some basic, default rules that they can consistently apply in all but the most complex cases. A fair and balanced statute written by experts in the field would benefit all involved.

. See § 61.08(7), Fla. Stat. (2010). In the 2010 version of the statute, the purpose of durational alimony was to "provide a party with economic assistance for a set period of time following a marriage of short or moderate duration." § 61.08(7), Fla. Stat. (2010) (emphasis added). The 2011 version added that the purpose of durational alimony was to provide such assistance "following a marriage of short or moderate duration or following a mairiage of long duration if there is no ongoing need for support on a permanent basis." § 61.08(7), Fla. Stat. (2011) (emphasis added). The changes made in the 2011 version of the statute "apply to all initial awards of alimony entered after July 1, 2011, and to all modifications of alimony of such awards made after July 1, 2011.” See ch. 2011-92, § 80, at 1704, Laws of Fla.