DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LISA KIM KARKHOFF,**
Appellant,

v.

**THOMAS ANTHONY ROBILOTTA,**
Appellee.

No. 4D19-2947

[December 9, 2020]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 502017DR012185XXXSB.

Michael D. Cirullo, Jr., of Goren, Cherof, Doody & Ezrol P.A., Fort Lauderdale, and Joshua K. Friedman and Jason A. Brodie of Brodie & Friedman P.A., Boca Raton, for appellant.

Doreen Inkeles of Law Firm of Charles D. Jamieson P.A., West Palm Beach, for appellee.

KLINGENSMITH, J.

Lisa Kim Karkhoff ("Former Wife") appeals the trial court's Final Judgment of Dissolution of Marriage raising six issues. Thomas Anthony Robilotta ("Former Husband") cross-appeals from the same Final Judgment asserting three more. We reverse and remand the trial court's Final Judgment to either correct or further address the various matters discussed herein. We affirm without comment any issues not specifically discussed.

The parties were married for approximately thirteen years before Former Husband petitioned for dissolution of marriage. They have one child who is disabled with ongoing medical needs, and Former Wife provides most of his day-to-day care. Following a trial on the issues, the trial court made oral pronouncements followed by the entry of a written Final Judgment containing findings regarding jurisdiction, parental responsibility, timesharing, equitable distribution, alimony, child support, life insurance, a parenting coordinator, and communication between the parties. For the most part, the court's Final Judgment mirrored its oral pronouncement but with some differences.

Subsequently, both parties filed motions for rehearing or reconsideration in the alternative, alleging various errors in the Final Judgment. The trial court entered an order denying both motions, and this appeal and cross-appeal followed.

This court "review[s] the determinations of a trial court within a dissolution judgment for abuse of discretion. The determinations will be upheld unless they are not supported by competent evidence." *Jaeger v. Jaeger*, 195 So. 3d 414, 415 (Fla. 4th DCA 2016) (quoting *Jordan v. Jordan*, 127 So. 3d 794, 796 (Fla. 4th DCA 2013)).

## 1. INCONSISTENCY IN THE FINAL JUDGMENT REGARDING THE PARTIES' VEHICLES

"It is well-settled law that the trial court's oral pronouncement must conform to the written judgment." *Goosby v. Lawrence*, 711 So. 2d 577, 578 (Fla. 3d DCA 1998). When there is conflict between the oral pronouncement and the written judgment, the oral pronouncement must control. *Cappola v. Cappola*, 280 So. 3d 102, 104 (Fla. 4th DCA 2019); *Cajuste v. Herlitschek*, 204 So. 3d 80, 83 (Fla. 4th DCA 2016). If the written judgment suffers from internal conflict or inconsistency, it "should be reversed and remanded for correction or clarification." *Weymouth v. Weymouth*, 87 So. 3d 30, 36 (Fla. 4th DCA 2012); *see also Paskert v. Steffensmeier*, 295 So. 3d 361, 362 (Fla. 2d DCA 2020) (reversing and remanding to delete a portion of the final judgment that was inconsistent with the oral pronouncement); *Chovan v. Chovan*, 90 So. 3d 898, 899 (Fla. 4th DCA 2012) (remanding to correct an inconsistency between the final judgment and the marital settlement agreement, which was merged into the final judgment).

Two vehicles were at issue in this case: an adaptive van used to assist in transporting the parties' child, and Former Husband's personal vehicle—a Honda Fit. In the Final Judgment's equitable distribution section, the trial court ordered the Former Wife keep the van and Former Husband keep the Honda. The trial court also stated that the parties "waive[d] any right, title, or interest in and to" the other parties' vehicle. But, in the parenting plan's transportation section, which was attached to and incorporated in the Final Judgment, the trial court ordered that Former Husband "shall be given use of the adaptive van for his Saturday timesharing." The trial court also ordered Former Husband to leave the Honda for Former Wife when he was using the adaptive van.

The trial court's oral pronouncement on this issue is consistent with the Final Judgment. The oral pronouncement stated that "[Former] Wife shall keep the adaptive van" and "[Former] Husband shall keep the Honda [Fit]." The Final Judgment's equitable distribution section awarded the parties the vehicles outright and stated that they "waive[d] any right, title, or interest in and to" the

other parties' vehicle. The parenting plan's transportation section, which was in the Final Judgment, stated that Former Husband "shall" be given use of the adaptive van for his timesharing and that Former Wife "shall" be given use of the Honda while Former Husband is using the adaptive van. Allowing the parties to "keep" their respective vehicles is certainly consistent with ensuring that they waive any rights in the other parties' vehicle. Additionally, granting the parties limited use of the other parties' vehicle for timesharing is not inconsistent with allowing them to "keep" their vehicles.

While the oral pronouncement and the Final Judgment are consistent, the Final Judgment suffers from an internal inconsistency. The Final Judgment's equitable distribution section states that the parties waive any "right, title, and interest" in the other parties' vehicle, but the transportation section of the Parenting Plan grants the parties a "right" to use the other parties' vehicle for timesharing, or at least a limited "interest" in the other parties' vehicle during timesharing. *See Right*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A legally enforceable claim that another will do or will not do a given act; a recognized and protected interest the violation of which is a wrong."); *see also Interest*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[A]ny aggregation of rights, privileges, powers, and immunities; distributively, it refers to any one right, privilege, power, or immunity.").

According to the Final Judgment, "[t]he Court retains jurisdiction to enforce this Order[.]" Thus it appears that the Former Husband was given the "right" to use the adaptive van under the parenting plan because he would be able to bring an enforcement action if Former Wife does not allow him to use the van for his timesharing with the child. *See* E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 3.4, at 114. n.3 (3d ed. 1999) ("A is said to have a right that B shall do an act when, if B does not do the act, A can initiate legal proceedings that will result in coercing B.").

Whether the trial court intended to award the parties limited use of the vehicles during timesharing,[1] rather than have them waive all rights to the vehicles, is unclear from the face of the Final Judgment and the record. Because the Final Judgment's language is internally inconsistent, we reverse and remand for the trial court to clarify whether its intent was to (1) grant Former Husband a limited right to use the adaptive van for timesharing, or (2) have the parties

---

[1] We note that the trial court has the ability to authorize this arrangement, so long as it is in the best interests of the child and does not conflict with any other provisions of the order. *See* § 61.13(2)(c), Fla. Stat. (2019) (stating that a trial court can "determine all matters relating to parenting and time-sharing of each minor child of the parties in accordance with the best interests of the child"); §§ 61.13(3)(s), (t), Fla. Stat. (2019) (stating that the court should evaluate "the needs of the child" and "any other factor that is relevant to the determination of a specific parenting plan, including the time-sharing schedule" when determining the "best interests of the child").

truly waive all rights in the other parties' vehicle. *See Weymouth*, 87 So. 3d at 36; *Chovan*, 90 So. 3d at 899.

### 2. ORDER FOR FORMER WIFE TO REFINANCE THE MARITAL RESIDENCE

A trial court has the authority to order a party to refinance a home and remove the other party from the mortgage. *See Tarnawski v. Tarnawski*, 851 So. 2d 239, 241 (Fla. 4th DCA 2003). However, when a trial court orders a party to refinance a home in a final judgment, that final judgment must direct a result if that party is unable, or simply fails, to refinance the home. *See Jones v. Jones*, 184 So. 3d 1238, 1239 (Fla. 5th DCA 2016). Failure to include such a directive is reversible error. *See id.*

The trial court ordered that the marital home be awarded to Former Wife as part of her equitable distribution but that she had to refinance the home within 120 days. The court also found there was "credible evidence" that Former Wife could refinance the home.

In *Jones*, the trial court's final judgment "included language specifying that Former Wife must refinance or sell the home within eighteen months." *Id.* However, the final judgment did not include "the consequences should Former Wife fail to sell or refinance the home within the allotted time frame." *Id.* On appeal, the Fifth District held that the trial court erred in failing to include this information in the final judgment. *Id.*

While the trial court did not err in ordering Former Wife to refinance the marital home, it should have directed an alternate course of action if she could not or would not refinance the home. *See Jones*, 184 So. 3d at 1239; *see also Schumaker v. Schumaker*, 931 So. 2d 271, 275 (Fla. 5th DCA 2006) (trial court erred in failing to include the consequences should the former husband fail to refinance or sell the marital home within six months). Because the allotted period in the Final Judgment has already expired, the trial court's Amended Final Judgment should provide a renewed time frame for Former Wife to obtain refinancing and direct the result if she is either unable or unwilling to do so. *See, e.g., Patel v. Patel*, 162 So. 3d 165, 166 (Fla. 5th DCA 2015) (directing the trial court to order the former husband to refinance the marital home and to include a "hold harmless provision" if he is unable to do so).

### 3. INCONSISTENCY BETWEEN THE ORDER ON TIMESHARING AND ORAL PRONOUNCEMENT

As stated above, "the trial court's oral pronouncement must conform to the written judgment." *Goosby*, 711 So. 2d at 578. And when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement must control. *See Cajuste*, 204 So. 3d at 83.

In its oral pronouncement, the trial court stated that after the timesharing schedule's first six months, Former Husband could petition for additional timesharing, including overnights, "upon a showing that he attended a significant amount of therapy sessions . . . *and that he has been consistent with his weekend timesharing on Saturday.*" (emphasis added). The Final Judgment also confirmed that Former Husband could petition for additional timesharing if he had been "consistent with his weekend timesharing." However, the parenting plan, which was incorporated into the Final Judgment, stated that Former Husband could petition to change the timesharing schedule upon a showing that "he has been *consistent with his attempts* to exercise weekend timesharing." (emphasis added).

Although the language is similar, the nuanced difference alters Former Husband's requirements to modify the current timesharing arrangement. To petition for additional timesharing under the parenting plan, Former Husband need only *attempt* to exercise his weekend timesharing rather than exercise his weekend timesharing as provided by the Final Judgment. Because of this inconsistency, the language in the oral pronouncement (and the Final Judgment) controls over the language in the parenting plan. *See Cajuste*, 204 So. 3d at 83.

We remand on this issue with directions for the trial court to amend the language in the parenting plan so that it is consistent with the language in the oral pronouncement and the Final Judgment.

## 4. ORDER FOR PARENTING COORDINATION

While this court "review[s] the determinations of a trial court within a dissolution judgment for abuse of discretion," *Jordan*, 127 So. 3d at 796, if the lower tribunal "fail[s] to consider mandatory statutory factors" when it makes these determinations, it errs as a matter of law. *Callwood v. Callwood*, 221 So. 3d 1198, 1201 (Fla. 4th DCA 2017).

The trial court's Final Judgment ordered the parties to obtain a parenting coordinator as it believed the parties could benefit from someone who could "facilitate . . . the communication" between them. The trial court ordered Former Husband to pay the expenses related to the coordinator.

A parenting coordinator is "an impartial third party appointed by the court or agreed to by the parties whose role is to assist the parties in successfully creating or implementing a parenting plan." § 61.125(1)(d), Fla. Stat. (2019). The court may order a parenting coordinator to "assist in the resolution of disputes concerning" the parties' parenting plan. § 61.125(3), Fla. Stat. (2019). However, "[i]f there has been a history of domestic violence, the court may not refer the parties to parenting coordination unless both parents consent." § 61.125(4), Fla.

5

Stat. (2019). And if parties that have a history of domestic violence do consent, the court should also order "safeguards to protect the safety of the participants." § 61.125(1)(d), Fla. Stat. (2019). "Domestic violence" includes "any assault, aggravated assault, battery, aggravated battery . . . resulting in physical injury or death of one family or household member by another family or household member." § 741.28, Fla. Stat. (2019).

As the trial court noted, a parenting coordinator would certainly be helpful for the parties given their issues with scheduling timesharing. However, section 61.125(4) is clear that the court may not refer the parties to a parenting coordinator, without the consent of both parties, if there has been a history of domestic violence. The evidence in this case shows that there was a history of domestic violence. As such, the trial court was required to obtain the Former Wife's consent before granting Former Husband's request for a parenting coordinator. The record does not reflect that Former Wife ever consented to the coordinator's involvement. Because the trial court did not obtain Former Wife's consent, the trial court erred in ordering the parenting coordinator. And, even if the trial court obtained Former Wife's consent, it should have ensured that there were "safeguards to protect the safety of the participants." § 61.125(1)(d), Fla. Stat. (2019).

Therefore, we reverse and remand with instructions for the trial court to confirm Former Wife's consent to the appointment of the parenting coordinator, or in the event consent is not given, to strike that portion of the Final Judgment requiring said appointment.

## 5. ORDER FOR FORMER HUSBAND TO "MAINTAIN" LIFE INSURANCE

"We review for abuse of discretion that portion of the judgment mandating the purchase of insurance to secure alimony and child support." *Zvida v. Zvida*, 103 So. 3d 1052, 1054 (Fla. 4th DCA 2013).

Former Wife testified that taking care of the parties' child was a full-time job. She has no income and is dependent on Former Husband's alimony and child support payments to support herself and the child. In the event Former Husband dies and is unable to fulfill his durational alimony and child support obligations, Former Wife testified she would be left in "dire financial straits" as she has a disabled minor living with her and "limited earning capacity." *See Alpha v. Alpha*, 885 So. 2d 1023, 1034 (Fla. 5th DCA 2004). Thus, the record demonstrated special circumstances warranting Former Husband to obtain life insurance to secure his alimony obligations.

Based on the record, the court did not err in ordering Former Husband to obtain life insurance in the Final Judgment or in ordering that Former Wife be a named beneficiary only "for the duration of the alimony obligation." "Courts may require that child support and alimony awards be secured by life insurance on

6

the life of the obligor." *Alpha*, 885 So. 2d at 1033; *see also* § 61.08 (3), Fla. Stat. (2019) ("To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy . . . ."). "The insurance is either 'security' for unpaid alimony . . . or it is intended to be an asset of the beneficiary to provide future security beyond the time when alimony ceases due to the death of the payor." *Jones v. Jones*, 28 So. 3d 229, 232 n.4 (Fla. 2d DCA 2010).

However, when a trial court orders a spouse to purchase an insurance policy to protect an alimony or child support award, it "must make specific evidentiary findings regarding the availability and cost of insurance, the obligor's ability to pay, and the special circumstances that warrant the requirement for security of the obligation." *Sager v. Sager*, 291 So. 3d 965, 970 (Fla. 4th DCA 2020) (quoting *Zvida*, 103 So. 3d at 1054). "The failure to make the necessary findings in support of the maintenance of life insurance is reversible error." *See id.*

Although the record indicated special circumstances warranted ordering Former Husband to obtain life insurance, the Final Judgment in this case lacks the requisite factual findings needed to support such an order. *See id.* The Final Judgment only stated that it was granting Former Wife's "request for the Husband to maintain life insurance . . . to secure his alimony obligation" and that Former Wife would be "an irrevocable beneficiary of the life insurance for the duration of the alimony obligation." Thus, the Final Judgment only reveals the court's intent to have life insurance function as security if Former Husband dies and is unable to fulfill his alimony obligation. *See Smith v. Smith*, 912 So. 2d 702, 705 (Fla. 2d DCA 2005) (stating that the final judgment "must specify whether the insurance is security for unpaid support obligations . . . or whether all the insurance proceeds are to be distributed to the beneficiaries upon the spouse's death to minimize economic harm to the family"); *see also Kearley v. Kearley*, 745 So. 2d 987, 988 (Fla. 2d DCA 1999) (same). The Final Judgment also did not contain any findings regarding the cost and availability of an insurance policy.

Former Husband argues that the lack of such findings warrants striking the provision regarding life insurance from the Final Judgment. However, a trial court's decision to require life insurance to secure an alimony or child support obligation is only reversed without remand when there are no special circumstances to warrant such a requirement. *See Baker v. Baker*, 763 So. 2d 493, 495 (Fla. 4th DCA 2000) (stating that no special circumstances justified requiring the former husband to maintain life insurance). Because that is not the case here, outright reversal is not warranted. Additionally, when there is no evidence on the record of the cost and availability of life insurance, a case is typically remanded for the trial court to consider additional evidence on that issue. *See Pietras v. Pietras*, 842 So. 2d 956, 962 (Fla. 4th DCA 2003) (allowing trial court to receive additional evidence relating to cost of premiums and

consider the financial impact on the payor); *see also Milo v. Milo*, 718 So. 2d 343, 345 (Fla. 2d DCA 1998) (same).  Former Husband is correct that there was no evidence in the record regarding the cost of those policies he could obtain, but this evidence may only be determined when he applies for life insurance and specifics are determined by his insurance company.  Although generic policy terms and prices can be used as a benchmark, as was done here, more information must be obtained.

Due to the Final Judgment's lack of factual findings on this issue, we reverse and remand for the trial court to ensure that the Final Judgment contains specific findings regarding: the special circumstances justifying the life insurance requirement, Former Husband's insurability, the type and amount of life insurance required, and the cost of such a policy.  *See Jimenez v. Jimenez*, 211 So. 3d 76, 80 (Fla. 4th DCA 2017) (requiring the trial court to make those findings on remand); *Sager*, 291 So. 3d at 970; *Lopez v. Lopez*, 780 So. 2d 164, 165 (Fla. 2d DCA 2001) (noting that "there may be an insurability question" because the former husband had previously had an artificial heart valve inserted).  Additionally, because Former Husband testified he does not currently have life insurance, the language of the Final Judgment should be amended to require he *purchase* or *obtain* life insurance rather than *maintain* it.  *See Layeni v. Layeni*, 843 So. 2d 295, 300 (Fla. 5th DCA 2003) (using "maintain" when the party had a pre-existing life insurance policy at the time of the order);  *Hall v. Hall*, 721 So. 2d 446, 447 (Fla. 1st DCA 1998) (same).

## CONCLUSION

For the foregoing reasons, we reverse and remand for the trial court to make factual findings and amend the Final Judgment consistent with this opinion.  We affirm on all other issues.

*Affirmed in part, reversed in part and remanded.*

GERBER and CONNER JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

8